Eugene E. FOUQUETTE, Respondent,

v.

FIRST AMERICAN NATIONAL
SECURITIES, INC., Appellant,

Michael L. Laidlaw, et al., Respondents,

and

A.L. Williams Insurance Services,
Inc., Appellants.

No. C8–90–1835.

Court of Appeals of Minnesota.

Jan. 15, 1991.

Jeffrey Ross, Parsinen, Bowman & Levy, P.A., Minneapolis, for First American Nat. Securities, Inc. & A.L. Williams Ins. Services, Inc.

Robert J. Feigh, Jill A. Pinkert, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for Eugene Fouquette.

Michael L. Laidlaw, Belgrade, pro se.

Considered and decided by GARDEBRING, P.J., and KLAPHAKE and NIERENGARTEN,* JJ.

## OPINION

GARDEBRING, Judge.

Eugene Fouquette commenced a securities fraud action against First American National Securities, Inc. (FANS); Michael L. Laidlaw; Budget Management, Inc.; and A.L. Williams Insurance Services, Inc. (A.L. Williams). The trial court entered default judgment against Laidlaw and Budget Management.

Relying on an arbitration clause contained in a customer agreement, the remaining two defendants, FANS and A.L. Williams, moved to compel arbitration under Minn.Stat. § 572.09 (1990). The trial court denied their motion, and FANS and A.L. Williams appealed pursuant to Minn. Stat. § 572.26, subd. 1(1) (1990).

## FACTS

Respondent Fouquette claims that Laidlaw, acting as agent for FANS, fraudulently induced him to invest $33,000 in Budget Management.

Laidlaw is a securities and insurance agent for FANS and the president of Budget Management. FANS is a registered security broker/dealer and is the securities division subsidiary of A.L. Williams.

On February 21, 1989, Fouquette entered into a customer agreement with Laidlaw and FANS to purchase securities, and issued a $25,000 check to Budget Management. Fouquette claims Laidlaw represented that Budget Management was an investment fund of FANS and A.L. Williams.

The same day, Fouquette issued an additional check for $25,000 to be deposited in Common Sense Shareholder Services' money market fund. Later, Fouquette transferred a total of $8,000 from this money market fund to Budget Management. Fouquette alleges that Laidlaw induced him to make the transfers to Budget Management.

Fouquette requested Laidlaw to repay the $33,000 transferred to Budget Management, but Laidlaw refused. He did not request repayment of the other funds. Fouquette then initiated this lawsuit seeking damages in the amount he paid to Budget. FANS and A.L. Williams moved the trial court to compel arbitration under the customer agreement. The trial court denied their motion.

The customer agreement is a standard securities form with an arbitration clause. This clause states:

> I * * * [a]gree that unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. Such arbitration shall follow the procedures as set forth by a National Arbitration Committee of the National Association of Securities Dealers, Inc. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

---

* Wm. J. Nierengarten, retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

## ISSUES

1. Does federal law, which allows arbitration clauses to be severed from the entire contract, conflict with state law, which does not allow arbitration clauses to be severed, as to an arbitration clause in a customer securities agreement which applies to any controversy "unless unenforceable due to federal or state law?"

2. Can respondent properly stay arbitration proceedings upon a claim for damages relating to only part of his investment?

## ANALYSIS

■ An appellate court independently determines whether the trial court correctly interpreted an arbitration clause and is not bound by the trial court's interpretation. *Michael–Curry Companies, Inc. v. Knutson Shareholders Liquidating Trust,* 449 N.W.2d 139, 141 (Minn.1989).

## I

■ The trial court determined: (1) that Fouquette's defense of fraudulent inducement stayed arbitration; (2) that state law controlled the agreement; and (3) that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 14 (1987) does not preempt the Minnesota Uniform Arbitration Act, Minn. Stat. §§ 572.08 to 572.30 (1988).

We agree. The parties agreed to settle any controversy arising out of or relating to the agreement or its breach by arbitration, unless unenforceable due to federal or state law.

■ The FAA does not manifest a policy preference for a particular set of procedural rules; rather, it simply ensures the enforceability of private agreements to arbitrate. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989). The United States Supreme Court has recognized that:

> [T]he FAA does not require parties to arbitrate when they have not agreed to do so * * *, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement * * *.

*Id.* 109 S.Ct. at 1255 (citations omitted).

■ While the FAA contains no express preemptive provision, federal law *may* preempt state law to the extent that it actually conflicts with federal law. *Volt,* 489 U.S. at 477–478, 109 S.Ct. at 1254–55. A conflict exists when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* 109 S.Ct. at 1255.

Appellants cite *Fairview Cemetery Assoc. v. Eckberg,* 385 N.W.2d 812 (Minn. 1986), to support the notion that Minnesota law recognizes a preemption of the FAA by the Minnesota Securities Act. Minn.Stat. ch. 80A (1988). Such reliance is misplaced. While the FAA preempts part of the Minnesota Securities Act, that preemption is limited to Minn.Stat. § 80A.23, subd. 10, which is in direct conflict with the FAA. Here, no such direct conflict exists, and the rationale of *Fairview Cemetery* cannot be expanded to support the notion of a more generalized conflict.

Under federal law, allegations of fraud in the inducement of the entire contract are arbitrable, unless the making of the agreement for arbitration or the failure to comply therewith is specifically in issue. 9 U.S.C. §§ 2, 3 (1987); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In *Prima Paint,* the Court stated:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it.

*Id.*

Minnesota law differs from federal law in that an arbitration clause is not severable from the entire contract. *Cell v. Moore & Schley Securities Corp.,* 449 N.W.2d 144, 149 n. 4 (Minn.1989); *see Thayer v. American Financial Advisers, Inc.,* 322 N.W.2d 599, 603 (Minn.1982); and *Atcas v. Credit Clearing Corp.,* 292 Minn. 334, 348, 197 N.W.2d 448, 456 (1972). Under Minnesota law, allegations of fraud vitiating the

primary subject matter of the contract will also vitiate the arbitration clause. Minn. Stat. § 572.08 (1988); *Thayer,* 322 N.W.2d at 603 (quoting *Atcas,* 292 Minn. at 348, 197 N.W.2d at 456).

■ In this case, state and federal law reach different results regarding severability of an arbitration clause. Under state law, the clause is nonseverable and the fraudulent inducement claim is not arbitrable; under federal law, the clause is severable and the fraudulent inducement claim is arbitrable. However, while these laws reach different results, they do not "conflict" under these facts. *See Thayer,* 322 N.W.2d at 603 (there is no evidence in the history or the language of the Federal Act suggesting that Congress intended to preempt state regulation of arbitration agreements that are part of contracts involving interstate commerce). Since the parties in this case agreed to be governed by both federal and state law, both should apply. *See Volt,* 489 U.S. at 477, 109 S.Ct. at 1254. The result is that the claim is not subject to arbitration, if certain other requirements of Minnesota law, discussed herein, are met.

## II

■ The trial court applied Minnesota law and concluded that because Fouquette alleged fraud in the inducement, this claim must be summarily determined prior to commencing arbitration unless the parties intended to arbitrate fraud. The trial court did not examine whether Fouquette sought rescission of the entire contract.

Appellants note that Fouquette is seeking damages for some, but not all of his securities transactions with FANS. Fouquette argues that his complaint alleged fraudulent inducement and that the specific transactions sought to be rescinded were part of the investment agreement. We conclude that this is not enough.

In *Atcas* the court stated:

In order to stay arbitration proceedings on the grounds of fraud in the inducement of the contract, we hold that the party seeking such relief must properly proceed to avoid the agreement; that is, he must seek rescission but not damages, and he cannot rescind in part and affirm in part. His rescission of the contract must be in toto.

*Id.,* 292 Minn. at 348, 197 N.W.2d at 456. The Minnesota Supreme Court also expressed concern that "parties often allege fraud in the inducement as a final attempt to avoid arbitration." *Michael–Curry,* 449 N.W.2d at 142.

Fouquette seeks "rescission damages" from his investments in Budget Management, not a rescission of the entire agreement. He does not seek the return of his monies invested in Common Sense Shareholder Services' money market fund. He did not properly proceed to avoid the agreement, but, rather, attempts to rescind in part and affirm in part. Accordingly, arbitration may not be stayed on the grounds of fraud pursuant to *Michael–Curry, Thayer* and *Atcas.*

Because Fouquette does not seek rescission of the entire contract, we do not discuss the *Atcas* guidelines for determining whether the parties intended to arbitrate fraud in the inducement. *See Atcas,* 292 Minn. at 347–48, 197 N.W.2d at 456.

## DECISION

The trial court erred in issuing an order denying appellant's motion to compel arbitration. We hereby order the parties to arbitrate respondent's fraud claims as required by the customer agreement.

Reversed.