CINCO ENTERPRISES, INC., Appellee,

v.

Steve J. BENSO and Pasquale Benso, Appellant.

No. 80205.

Supreme Court of Oklahoma.

Dec. 6, 1994.

D. Benham Kirk, Jr., Harvey D. Ellis, Jr., Oklahoma City, for appellant.

Timothy E. Rhodes, Michael R. Hoover, Oklahoma City, for appellee.

ALMA WILSON, Justice.

The dispositive question is whether Cinco Enterprises, Inc., appellee, is entitled to a

money judgment as a matter of law on its claim that Pasquale Benso, appellant, promised to answer for five promissory notes signed by Steve J. Benso and sued on herein. We answer in the negative and hold that the district court erred in granting summary judgment in favor of Cinco Enterprises, Inc.

## THE FACTS.

The parties do not dispute the basic facts. Steve J. Benso, the son of Pasquale Benso, appellant, was indebted to the Norman Bank of Commerce on the five promissory notes. The earliest note was executed in June, 1984, in the amount of $18,301.57, plus the finance charges and interest, and it provides that the purpose of the loan was to finance the renewal of four earlier loans and that it is secured by a financial statement. The second note was executed in December, 1984, in the amount of $27,500.00, plus finance charges and interest, and it provides that it is secured by real estate. The remaining three notes were executed in January, February and April, 1985, in the amounts of $2,500.00, $3,000.00 and $2,000.00 respectively, and each provides that the security is open.[1]

On August 9, 1985, James K. West, Executive Vice President, Norman Bank of Commerce, made another loan to Steve Benso and Steve executed a sixth promissory note in the amount of $11,100.00 and his father, Pasquale Benso, executed a separate guaranty agreement.[2] The guaranty agreement, dated August 9, 1985, identifies the Norman Bank of Commerce as the lender and Steve Benso as the customer. The guaranty agreement does not identify the note or notes guaranteed, nor otherwise specify the credit to the customer and/or other consideration given for the guaranty, except in general terms, the printed language provides:

The undersigned Guarantor(s) hereby requests the Lender to give and continue to give the above name Customer(s) credit,

1. All five notes are standard form promissory notes with a section for endorsements of guarantors on the back side. None of the five notes are endorsed by a guarantor. Steve J. Benso executed extension agreements on two of the notes and the line provided for a guarantor's signature on each of the extension agreements is also blank.

2. The sixth promissory note has been satisfied; it is not sued on herein; and it is not in the appellate record.

and in consideration for any credit given, the undersigned Guarantor hereby absolutely and unconditionally guarantees payment, on demand.... Guarantor agrees to pay ... any and all existing and future indebtedness and liabilities of every kind....

Steve J. Benso defaulted in the payment of some or all of the promissory notes and the Norman Bank of Commerce filed suit. The Norman Bank of Commerce was declared insolvent and Cinco purchased the six promissory notes from the FDIC, as receiver of the insolvent Commerce Bank of Norman, apparently in a liquidation sale.[3] Cinco made separate settlement offers on each of the six notes to Steve Benso, but it did not pursue the suit against Steve Benso.[4] Cinco also made a single settlement offer to Pasquale Benso.[5] Pursuant to the settlement offer, Pasquale Benso paid Cinco $5,550.00. Cinco then sued Steve Benso and Pasquale Benso on the five promissory notes which had been executed prior to the sixth note and the guaranty, but Cinco voluntarily dismissed Pasquale Benso as a party to that suit.[6]

**3.** Cinco's petition alleges that it purchased the notes from FDIC as receiver or liquidator. Otherwise, the appellate record does not reveal any details of the transaction between FDIC and Cinco. Such evidence is not essential to the issue addressed.

**4.** *Norman Bank of Commerce v. Steve Benso*, Case No. C–86–1225, Cleveland County District Court. In April, 1987, the suit filed by Norman Bank of Commerce was dismissed when neither party appeared for the Call Docket.

**5.** Although there is no documentary evidence of the settlement offer made to Pasquale Benso, the record does contain copies of two letters dated May 27, 1987, addressed to Steve Benso and Pasquale Benso, respectively, wherein Carl M. Lightner acknowledged acceptance of Cinco's offers to settle the sixth note, the $11,100.00 note, for payment of $5,500.00 from Steve Benso and $5,500.00 from Pasquale Benso. The content of these two letters are substantially the same. Both letters advise that Cinco's offers to settle the other notes submitted to Steve Benso have expired and a listing of the other five promissory notes is attached to each letter.

**6.** *Cinco Enterprises, Inc. v. Steve J. Benso and Pasquale Benso*, Case No. C–87–1994, Cleveland County District Court. Apparently, Pasquale

## THE PROCEEDINGS.

■ A year later, in November, 1988, Cinco filed this cause against Steve J. Benso and Pasquale Benso. Cinco alleged that Pasquale Benso is liable for the payment of the five promissory notes pursuant to the guaranty agreement. Thereafter, Steve J. Benso filed a bankruptcy proceeding so that his liability is no longer at issue. In August, 1989, Cinco was granted a default judgment against Pasquale Benso. The default judgment was vacated in October of 1989.[7]

In May, 1992, Cinco moved for summary judgment asserting that Pasquale Benso's guaranty agreement is a continuing and unconditional guaranty which obligates him to answer for all the debts of Steve J. Benso. In response to summary judgment, Pasquale Benso asserted that the $5,550.00 payment was made in settlement of all claims by Cinco against Pasquale Benso and that, at the time the guaranty agreement was signed, he and the Norman Bank of Commerce agreed that the guaranty would not cover the previous loans, the five promissory notes herein. Cinco argued that evidence of any oral agreement limiting the terms of the written guar-

Benso moved for summary judgment and submitted the affidavit of James K. West, an executive vice president of the Norman Bank of Commerce, stating that it was his intent in accepting the guaranty for the bank that Pasquale Benso's guaranty was for the $11,100.00 note only. In the same order entered in November, 1987, Pasquale Benso's request for summary judgment was denied and Cinco's dismissal of Pasquale Benso as a party was allowed.

**7.** Even though the August, 1989, default judgment was vacated in October, 1989, Cinco filed an affidavit of judgment in December, 1991, and instituted garnishment proceedings. In March, 1992, the garnishees were discharged and in April, 1992, the judgment lien was released.

In his appeal brief, Benso asserts an accord and satisfaction agreement—that Cinco agreed to forebear prosecution of its claim on the guaranty in exchange for Benso's agreement to forebear prosecution of his wrongful garnishment claim. Nothing in the appellate record indicates that Benso asserted in the trial court an accord and satisfaction agreement regarding the garnishment proceedings instituted prior to judgment in this cause. Defenses raised for the first time on appeal will not be considered in the appellate review. *McKinney v. Harrington*, 855 P.2d 602 (Okla.1993).

**870**

anty is not admissible under the parol evidence rule and the D'Oench, Duhme doctrine. Pasquale Benso responded, arguing that the parol evidence rule does not bar evidence of mutual mistake and intent of the contracting parties so as to reform the guaranty agreement and that Cinco is not protected by the D'Oench, Duhme doctrine.

The district court granted summary judgment in favor of Cinco and against Pasquale Benso for the sum of $106,096.75, with interest thereon at the rate of 14% per annum until paid, together with costs and reasonable attorney fees. The Court of Appeals affirmed, concluding that the D'Oench, Duhme doctrine is inapplicable and that Pasquale Benso is not entitled to present parol evidence to alter the terms of the guaranty agreement. We previously granted certiorari.

## THE D'OENCH, DUHME DOCTRINE DOES NOT PRE-EMPT STATE LAW, IN THE ABSENCE OF PROOF OF A SECRET AGREEMENT.

■ The district court judgment does not recite the legal authority that entitles Cinco to judgment as a matter of law. However, both parties urge that the judgment is based upon the D'Oench, Duhme doctrine. The federal common law D'Oench, Duhme doctrine protects the FDIC, or similar federal entities in preserving the going concern of a failed financial institution and the applicable federal deposit insurance fund.[8] Under the D'Oench, Duhme doctrine, a debtor is estopped from asserting state law defenses based on a secret agreement between a financial institution and the debtor that would diminish an asset of a failed financial institution.

Cinco contends that the D'Oench, Duhme doctrine is triggered by the secret agreement between James K. West, Executive Vice President, Norman Bank of Commerce, and Pasquale Benso that the prior loans made to Steve J. Benso are not covered by the guaranty agreement. Pasquale Benso submitted a memorandum and an affidavit of James K. West. The memorandum, briefly explains the status of the loans made to Steve J. Benso and recognizes that Pasquale Benso has guaranteed "the note." The memorandum was prepared and placed in the bank file with the sixth note and the guaranty a few days after those documents had been completed. The affidavit explains the bank's unvarying policy to obtain a separate agreement for each loan guaranteed and to file the loan papers and the guaranty together. The affidavit also provides that West did not intend that the guaranty would cover all the loans made by the Norman Bank of Commerce to Steve J. Benso. Cinco objected to the memorandum and affidavit as inadmissible under the Statute of Frauds and the parol evidence rule, discussed infra.

■ Upon thorough review of the summary judgment evidence, we do not find any evidence of a secret agreement that might diminish an asset of the bank. There is no evidence showing that banking authorities did treat the subject guaranty agreement as covering the promissory notes sued on herein. Pasquale Benso's signature as guarantor is not found on any of the promissory notes or the extension agreements thereon. The guaranty agreement, signed contemporaneously with the sixth promissory note, does not expressly extend the guaranty to the subject notes. And, the guaranty agreement was not filed in the credit files for the subject notes, nor otherwise attached thereto. Cinco has failed to present any evidence to support the existence of a secret agreement under D'Oench, Duhme.[9]

8. *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *Bell & Murphy and Associates, Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750 (5th Cir.1990); *Federal Deposit Insurance Corporation v. Wood,* 758 F.2d 156 (6th Cir.1985); *Oklahoma Radio Associates v. FDIC,* 987 F.2d 685 (10th Cir.1993); *Castleglen, Inc. v. RTC,* 984 F.2d 1571 (10th Cir.1993); *Grubb v. FDIC,* 868 F.2d 1151 (10th Cir.1989); and 12 U.S.C. § 1823(e).

9. Whether an agreement is a secret agreement that will trigger the *D'Oench, Duhme* doctrine is a mixed question of fact and law. Our review of the summary judgment evidence does not interfere with the fact-finding province of the trial court upon full trial herein.

## THE STATE LAW ISSUES AND ARGUMENTS ARE REVIEWABLE.

■ Ordinarily, issues and arguments which are not presented to and passed upon by the trial court will not be reviewed on appeal.[10] The parties represent that the district court passed upon the D'Oench, Duhme issues and argument, but there is no representation that the district court did not pass upon the state law issues and arguments. The summary judgment states that it is "based upon the authority and statements filed in support of and in opposition" to the motion for summary judgment and "upon the arguments of counsel" and finds "that there is no substantial controversy as to any material facts or issues and that plaintiff, CINCO, is entitled to judgment as a matter of law on plaintiff's claim." The issues relating to the intent of the guaranty agreement and the accord and satisfaction were argued on summary judgment and throughout this appeal and stand presented for our review.

## THE CONSIDERATION FOR A PROMISE TO ANSWER FOR THE FIVE PROMISSORY NOTES EXECUTED PRIOR TO THE GUARANTY AGREEMENT IS A MATERIAL FACT WHICH MUST BE PROVEN BY THE EVIDENCE.

■ We review the summary judgment granted to Cinco, first, to determine whether Cinco, as movant, carried its burden. The party moving for summary judgment has the burden to prove the facts material to its claim and to show the absence of any factual dispute of the facts material to the claim or defense.[11] A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a claim or defense.[12] Unsupported contentions of material fact are not sufficient.[13] Material facts must be supported by affidavits and other testimony and documents that would be admissible in evidence at trial.[14]

■ To be entitled to summary judgment, Cinco had to set forth a statement of material facts and to present evidence in support thereof showing there is no substantial controversy as to the material facts and that it is entitled to a money judgment against Pasquale Benso on the five notes and separate guaranty as a matter of law.[15] In the absence of a written expression of the intent of the contracting parties, the critical element of Cinco's guaranty claim is that Pasquale Benso intended to answer for the five loans made to Steve J. Benso prior to the guaranty agreement.

The uncontroverted material facts which Cinco set forth to support its guaranty claim against Pasquale Benso are that: 1) Benso's signature is attached to the guaranty; 2) Benso executed the guaranty; and, 3) the guaranty "guarantees payment of any and all existing and future indebtedness and liabilities". With these undisputed facts, Cinco is contending that it is entitled to judgment as a matter of law, upon proof that Pasquale Benso intended to sign and did sign the guaranty agreement, because the guaranty language creates a continuing, unconditional and absolute liability on the part of Pasquale Benso for all loans made by the Norman Bank of Commerce to Steve J. Benso at any time. By the terms of the guaranty agreement, Pasquale Benso requested "the Lender to give and continue to give the above name Customer(s) credit" and promised to answer, absolutely and unconditionally, for the payment of the credit given pursuant to the request. Thus, it is a continuing[16] and un-

10. *Chilton v. Chilton,* 207 Okla. 647, 252 P.2d 121, 123 (1953); *Von Stilli v. Young,* 203 Okla. 86, 219 P.2d 224 (1950); and *Phelps v. Asplund,* 184 Okla. 310, 87 P.2d 134 (1939).

11. Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S.1991, ch. 2, app. 1.

12. *Hadnot v. Shaw,* 826 P.2d 978 (Okla.1992).

13. *Loper v. Austin,* 596 P.2d 544 (Okla.1979).

14. *Davis v. Leitner,* 782 P.2d 924 (Okla.1989).

15. Rule 13 of the Rules for District Courts of Oklahoma, supra.

16. 15 O.S.1991, § 336 defines a continuing guaranty as one that includes the future liability of the principal. We note that this case is governed by the statutes as codified in 1981, which are identical to the 1991 codification. We therefore reference the most recent codification.

conditional [17] guaranty as it relates to the credit given at the request of Pasquale Benso, but here, Cinco's claim rests upon prior executed notes.

As to any prior executed notes, the terms of the guaranty agreement provide that "Guarantor agrees to pay ... any and all existing and future indebtedness and liabilities of every kind." It does not, however, express the consideration given in exchange for the agreement to pay prior debts. In the absence of a written expression, the exchange of consideration between the guarantor, Pasquale Benso, and the guarantee, the Norman Bank of Commerce, is presumed where the note and the guaranty are contemporaneous. But, the exchange of consideration is not presumed when the debts are not contemporaneous. To be valid, the agreement "to pay any and all existing and future indebtedness and liability of every kind" must be supported by distinct consideration,[18] particularly where the guarantor denies the obligation.

The consideration for the guaranty agreement, distinct from the original obligations on the five promissory notes, cannot be ascertained from the face of the guaranty agreement, nor is it otherwise established by the summary judgment evidence. Hence, we find that Cinco failed to present evidence of an essential element of its guaranty claim. Cinco's statement of material facts alone is insufficient to support its claim to a money judgment on the five promissory notes against Pasquale Benso under the guaranty agreement as a matter of law.

## INQUIRY INTO THE OVER–ALL ARRANGEMENTS FOR A GUARANTY AGREEMENT IS APPROPRIATE WHERE THE AGREEMENT DOES NOT EXPRESS THE CONSIDERATION THEREFOR.

In opposition to summary judgment, Pasquale Benso submitted a memorandum and an affidavit of James K. West, Executive Vice President, Norman Bank of Commerce, to show that neither he nor the bank intended that the guaranty would cover the five notes sued on herein. The memorandum was placed in the bank file with the sixth note and the guaranty a few days after the documents had been completed and signed and it provides: "We have made Steve a loan for slightly over $11,000.00. The proceeds of which were used for current operating capital and his father, Patsy Benso, has guaranteed the note." The affidavit says that the bank's "unvarying policy" was to utilize a single guaranty for each promissory note it sought to be guaranteed, and to place that guaranty in the credit file for the applicable note.[19] Cinco objected to the evidence as inadmissible to alter the terms of the guaranty under the parol evidence rule and the Statute of Frauds.

Cinco argues that the parol evidence rule prevents consideration of the over-all arrangements for the guaranty agreement. Notwithstanding the parol evidence rule,[20] extrinsic evidence is generally admissible when it is shown that by reason of mutual mistake the true intention of the par-

---

17. 15 O.S.1991, § 331, defines an unconditional guaranty as one that contains no express condition precedent to the liability of the guarantor.

18. 15 O.S.1991, § 323 presumes the exchange of consideration between the guarantor and the guarantee where the note and the guaranty are contemporaneous even in the absence of a written expression, and provides that, in all other cases, consideration given for the guaranty agreement is distinct from the original obligation. That is, there is no statutory presumption that a previously executed indebtedness of the principal obligor constitutes consideration to the guarantor. In such a case, there must be distinct consideration given. *Clements v. Jackson County Oil & Gas Co.,* 61 Okla. 247, 161 P. 216 (1916).

19. Such a policy is consistent with *Shepard Mall Bank v. Johnson,* 603 P.2d 1115 (Okla.1979), wherein this Court concluded that, in the absence of clear expression of the guarantor's obligation, the guaranty agreement must be included on the face of the note or it must be an attachment thereto.

20. The parol evidence rule is codified at 15 O.S. 1991, § 137, which provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

ties is not expressed in the contract.[21] Further, mutual agreements as to the meaning of the contract terms are essential to a guaranty agreement the same as any other contracts.[22]

 Cinco also argues that evidence of oral negotiations leading to the written guaranty agreement is not admissible under the Statute of Frauds. The Statute of Frauds governs special guaranty agreements,[23] while the guaranty agreement herein is governed by the guaranty statutes. The applicable statute is 15 O.S.1991, § 324, which provides that "a guaranty must be in writing, and signed by the guarantor; but the writing need not express a consideration." As we read § 324, it contemplates the necessity for extrinsic evidence where the credit extended as consideration for the guaranty is not specified in the guaranty agreement nor in an attachment thereto. In conjunction with § 324, § 323 also contemplates the necessity for extrinsic evidence to show the consideration distinct from the original obligation.[24]

In response to the motion for summary judgment, Pasquale Benso submitted affidavits and other materials supporting his contention that the guaranty agreement did not guarantee the five promissory notes sued on herein. Such evidence was proper under the authority of *Heenan v. Davis*, 182 Okla. 237, 77 P.2d 78 (1938), Syllabus by the Court, which reads:

21. The parol evidence rule has no application to evidence introduced in actions for the reformation of instruments for the purpose of establishing a mutual mistake of the parties at the time of the execution of the contract. *Crockett v. McKenzie*, 867 P.2d 463 (Okla.1994); *Fabbro v. Reese*, 206 Okla. 655, 246 P.2d 324 (1952); *Prudential Fire Ins. Co. v. Stanley*, 191 Okla. 506, 131 P.2d 88 (1942); and *Whittaker v. White*, 169 Okla. 336, 37 P.2d 247 (1934).

22. *Oehler v. Cawley*, 105 Okla. 59, 231 P. 539, (1924).

23. The Statute of Frauds, 15 O.S.1991, § 136, provides:

The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged.

2. A special promise to answer for the debt, default or miscarriage of another, **except in the**

4. In determining the nature or extent of a guaranty agreement whose terms are not definitely shown, evidence of the construction of the extent of the obligation as given to the contract by the creditor and the debtor is admissible in favor of the guarantor where such evidence as to the creditor tends to show that the creditor recognized that the guaranty did not cover the particular matters sued on.

## ACCORD AND SATISFACTION IS A QUESTION OF FACT.

 In support of summary judgment, Cinco asserted that there has been no accord and satisfaction entered into among the parties with regard to the instruments sued upon and submitted an affidavit of its president, William Harris. The affidavit provides: "Cinco has not entered into an accord and satisfaction agreement with either defendant for any note, extension agreement or guaranty agreement sued upon in this action ... Cinco entered into an accord and satisfaction agreement with Pasquale Benso on a single note, # 13133, of which Pasquale was a guarantor." In response, Pasquale Benso asserted that the parties entered into an accord and satisfaction agreement regarding Benso's obligation as guarantor and submitted his affidavit that he and Cinco reached an agreement that his payment of $5,500.00 would be in full settlement of any claim on the guaranty.[25]

cases provided for in the article on guaranty....

[Emphasis added.]

24. Section 323 is discussed in footnote 18, supra.

25. Cinco objects to review of the accord and satisfaction issue and arguments on the grounds that it is not presented in a proper pleading. However, in his answer, Pasquale Benso alleged:

There is an accord and satisfaction between this Defendant and Plaintiff in that on or about May 12, 1987, this Defendant paid the Plaintiff the sum of Five Thousand Five Hundred and Fifty Dollars ($5,550.00) as settlement of all claims against this Defendant.

The accord and satisfaction defense is also presented in the summary judgment pleadings. See, *Martin v. Chapel, Wilkinson, Riggs and Abney*, 637 P.2d 81 (Okla.1981), wherein we said that affirmative defenses may be asserted in the summary judgment pleadings.

Whether the parties have reached an accord and satisfaction depends upon the circumstances in each case and must be ascertained from the parties' intentions.[26] Evidence of an accord and satisfaction must show that the parties reached a meeting of the minds and that the purpose and intent of the parties was to discharge a prior obligation and the question of intention is a question of fact to be determined by a jury, unless a jury is waived and the matter is tried to the court.[27]

Pasquale Benso's defense of accord and satisfaction is more than mere contention— Cinco's affidavit admits the existence of the defense. Accordingly, whether Cinco and Pasquale Benso entered into an accord and satisfaction agreement is a question of fact to be determined from all the evidence and there can be no trial of fact on summary judgment.[28]

## CONCLUSION

Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials, and all inferences to be drawn therefrom, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[29] In granting summary judgment, the court may not weigh the evidence or otherwise try a factual dispute.[30] Rather than showing the absence of a factual dispute, the summary judgment record presents substantial controversy as to facts material to the claims and defenses in this case. The district court erred in granting summary judgment in favor of Cinco.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; SUMMARY JUDGMENT OF THE DISTRICT COURT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

26. *Gentry v. Fife*, 56 Okla. 1, 155 P. 246 (1916).

27. *Frame v. State Commissioners of Land Office*, 196 Okla. 292, 164 P.2d 865 (1946).

28. *French v. Sotheby & Company*, 470 P.2d 318 (Okla.1970).

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in part and dissents in part.

WATT, J., dissents.

29. *Buckner v. General Motors Corp.*, 760 P.2d 803, 812 (Okla.1988).

30. *Federal Deposit Ins. Corp. v. Moss*, 831 P.2d 613 (Okla.1991).