Robert SHAFFER, Denise Shaffer, Danny L. Childers, Jane A. Childers, Randy Garland, Robin Garland, Brad Turner, Robin Turner, Randall P. Robinson, and Carolyn P. Robinson, Appellants,

v.

Adam J. JEFFERY, and John Lampton Belt d/b/a John Lampton Belt & Associates, Appellees.

Thomas P. GORESEN and Virginia J. Goresen, Appellants,

v.

Adam J. JEFFERY, and John Lampton Belt d/b/a John Lampton Belt & Associates, Appellees.

Nos. 81275, 83219.

Supreme Court of Oklahoma.

March 26, 1996.

Murray E. Abowitz, Norman Lemonik Abowitz, Welch, and Rhodes, Oklahoma City, for Appellee John Lampton Belt, d/b/a John Lampton Belt & Associates in Cause Nos. 81275 and 83219.

Cheryl P. Hunter, Daniel L. Pulter, Hammons & Hunter, Oklahoma City, for Appellants in Cause Nos. 83219 and 81275.

SUMMERS, Justice.

The plaintiffs are six couples, each of which was hopeful of adopting a child. The defendants are Adam J. Jeffery and his former law firm. It is alleged that Jeffery developed a pattern of collecting fees from couples wanting to adopt, in return for his assurances that a child would soon be available for adoption, replete with fictitious promises from non-existent birth mothers and status reports on imaginary pregnancies. When time passed and it become clear there were no babies to adopt the would-be parents filed suit in state court.[1]

Their petitions seek rescission of the fee agreements, and damages for breach of contract, conversion, the tort of outrage, fraud and legal malpractice. Jeffery failed to respond to the petition and is in default, but the Law Firm successfully moved the trial court to dismiss the claims against it because the attorney-client contract contained a clause that future disputes would be resolved by arbitration.

On appeal the Court of Appeals directed the District Court to treat the motions to dismiss as motions to compel arbitration, and to enter appropriate orders compelling arbitration. We previously granted certiorari. We do not consolidate the appeals, but dispose of both by one opinion.

█ In the trial court the Law Firm (Jeffery had been an associate with the firm) filed motions to dismiss, and argued that the trial court lacked subject matter jurisdiction because of the arbitration clause in the fee agreements signed by the Plaintiffs. The trial court agreed and dismissed the suits. On appeal the plaintiffs argue that the arbitration provision in the contract is unconstitutional and contrary to public policy, and that the fee agreements containing the arbitration clause were induced by fraud. The Law Firm argues that its motions to dismiss for lack of subject matter jurisdiction were proper, and the trial court's judgments should thus be affirmed. We conclude that the Law Firm's challenge did not go to the jurisdiction of the court.

The plaintiff's arguments as to unconstitutionality and unenforceability of arbitration agreements generally in Oklahoma have been addressed by us in *Rollings v. Thermodyne Industries, Inc.*, 910 P.2d 1030 (Okla.1996). We therein upheld the enforceability of voluntary agreements to submit future disputes to arbitration pursuant to the Oklahoma Arbitration Act. The contract provisions in

---

1. In the United States District Court for the Western District of Oklahoma Jeffery was convicted of three counts of mail fraud, five counts of wire fraud, and one count of money laundering. Cause W.D.Okla., No. CR–92–207–C. In an unpublished disposition on appeal the convictions were affirmed, the sentencing order vacated, and the case remanded for resentencing. *U.S. v. Jeffery*, 33 F.3d 63 (10th Cir.1994), (Ta-

ble), *cert. denied,* —— U.S. ——, 115 S.Ct. 1264, 131 L.Ed.2d 143 (1995). *See* 1994 WL 468099 (10th Cir.Okla.), (unpublished disposition). Jeffery resigned his membership in the Oklahoma Bar Association pending disciplinary proceedings. *See Oklahoma Bar Association v. Jeffery*, No. S.C.B.D. 3837, 63 O.B.J. 2593 (Sept. 19, 1992), (order approving resignation).

dispute here fall into that category.[2] But does an agreement to arbitrate deprive the district court of subject matter jurisdiction? The Law Firm argues that it does. We come to a different conclusion based upon the nature of the arbitration clause.

■ The right of the Law Firm to arbitration in this controversy arises from an agreement and is contractual in nature. See *Shawnee Hospital Auth. v. Dow Construction*, 812 P.2d 1351, 1353–1355 (Okla.1990) where we explained that contractual rights (including an arbitration clause) were superseded by a subsequent settlement agreement. The contractual right to compel arbitration has been treated as a defense to an action on the contract. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir.1995). An agreement to arbitrate is treated as an affirmative defense by the Federal Arbitration Act. *Morewitz v. West of England Ship Owners, etc.*, 62 F.3d 1356, 1364 (11th Cir.1995). Thus, a party may waive its contractual right to compel arbitration.[3]

■ We need not address under what circumstances a waiver of this right occurs, since the Law Firm did raise the defense in this case. But our recognition of this contractual right as an affirmative defense does show that the right does not fit within the category of a traditional challenge to a district court's subject matter jurisdiction. This is because subject matter jurisdiction is not dependent upon the consent (or waiver) of a party, and a challenge to subject matter jurisdiction may be raised at any time in the course of the proceedings. *Barrett v. Barrett*, 878 P.2d 1051, 1054 (Okla.1994); *Campbell v. Campbell*, 878 P.2d 1037, 1044 n. 24 (Okla.1994). Additionally, a lack of subject matter jurisdiction results in dismissal. 12

O.S.1991 § 2012(F)(3). As opposed to this rule of dismissal, a district court has jurisdiction to compel or stay arbitration. 15 O.S. 1991 § 803. The affirmative defense of an agreement to arbitrate is not the same thing as lack of subject matter jurisdiction.

This was explained in *City of Muskogee v. Martin*, 796 P.2d 337 (Okla.1990) where one party argued that the district court lacked jurisdiction because of an arbitration clause in a collective bargaining agreement. The court stated that:

> [T]he district court does have the authority to determine if the dispute presented is arbitrable. Thus, it would be clearly erroneous to state the district court is totally without "jurisdiction" when faced with a petition requesting declaratory relief and a dispute arising under a collective bargaining agreement.

*Id.* 796 P.2d at 344.

The district court in this case has jurisdiction to determine if the dispute is arbitrable.

■ We conclude that the affirmative defense of arbitration was timely raised by the Law Firm. However, the motion seeking dismissal is appropriately considered to be a motion for summary judgment when it is based upon an affirmative defense with attached extra-record exhibits alleging statements of fact. We have said that in construing a provision of our Pleading Code we consider the federal counterpart from which it was derived. *Gay v. Akin*, 766 P.2d 985, 990 n. 18 (Okla.1988). The federal rule allows raising affirmative defenses by a Rule 12(b)(6) motion to dismiss, but when extra-record factual materials are used in support of the motion it is converted to one for summary judgment under Federal Rule 56.

---

2. One court has determined that in Oklahoma an arbitration clause in an attorney fee agreement could not be voided as a breach of attorney's fiduciary duty towards the client. *McGuire, Cornwell & Blakey v. Grider*, 765 F.Supp. 1048 (D.Colo.1991). The parties do not raise, and we do not address, the propriety of an arbitration clause in an attorney fee agreement, or whether circumstances could exist that would void an arbitration clause in an attorney fee agreement.

3. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir.1995); *Maxum Foundations, Inc. v. Salus Corporation*, 779 F.2d 974, 981 (4th Cir.1985); *Raines v. Independent School Dist. No. 6*, 796 P.2d 303, 306 n. 12 (Okla.1990), (Opala, V.C.J., Concurring); *Hough v. JKP Development, Inc.*, 654 So.2d 1241, 1242 (Fla.App. 3d Dist.1995), (citing Florida cases); *Campbell v. St. John Hospital*, 434 Mich. 608, 455 N.W.2d 695, 699 (1990), (statutory arbitration lost by failure to raise in first responsive pleading).

There is considerable authority to the effect that the conversion provision applies to affirmative defenses raised on a Rule 12(b)(6) motion. When defendant's motion to dismiss raises an affirmative defense that is not apparent on the face of the pleading and outside matter is presented and accepted, the courts generally will treat the motion as if it were one for summary judgment.

5A Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 1366 (1990), (Wright and Miller).

The United States Court of Appeals for the Tenth Circuit has followed this principle.[4] We have similarly explained that a motion to dismiss pursuant to section 2012(B)(6) is converted to one for summary judgment when extra-record materials are submitted in support of the motion. *Dyke v. Saint Francis Hospital, Inc.*, 861 P.2d 295, 299 n. 8 (Okla. 1993). See also 12 O.S.1991 § 2012(B), (a motion for failure to state a claim upon which relief may be granted with attached extra-record exhibits is treated as a motion for summary judgment).

■ Of course, once the motion to dismiss is converted to one for summary judgment the moving party has a different burden: "Once the proceeding becomes one for summary judgment, the moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." Wright & Miller, at § 1366. The burden is the same using Oklahoma's procedure for summary judgment. *Cinco Enterprises, Inc. v. Benso*, 890 P.2d 866, 871 (Okla.1994); *Indiana Nat. Bank v. State, Dept. of Human Services*, 857 P.2d 53, 59 (Okla.1993).

■ This brings us to the real issue in the case: Does a showing of fraud in the inducement of the attorney-client contract defeat the enforcement of the arbitration clause in that contract?

Arbitration agreements are statutorily allowed by Oklahoma's Uniform Arbitration Act. 15 O.S.1991 §§ 801–818 (inclusive).[5] At issue here is § 802(A), which in relevant part provides:

> This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, *except upon such grounds as exist at law or in equity for the revocation of any contract.*

(Emphasis added).

This section, as well as its federal counterpart, states that an arbitration agreement is revocable upon those grounds that exist at law or in equity.[6]

An analogous case is *Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963). Electronic Facilities sought to compel arbitration in accordance with provisions in its subcontractor agreements with Moseley. *Id.* 374 U.S. at 168, 83 S.Ct. at 1816. Moseley argued that both the subcontracts and the arbitration clauses contained were "procured through fraud." *Id.* 374 U.S. at 171, 83 S.Ct. at 1817–1818. The United States Supreme Court reasoned that "the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined." *Id.* The Court said that "If (fraud

**4.** *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir.1978), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); *Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118 (10th Cir.1979); *Miller v. Shell Oil Co.*, 345 F.2d 891 (10th Cir.1965).

**5.** The relevant provision of Oklahoma's adopted Uniform Arbitration Act, 15 O.S.1991 §§ 801–818 and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1988 ed. and Supp.) are nearly identical. See note 2 *infra*.

**6.** Section 2 of the FAA (9 U.S.C. § 2) provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

is established) there can be no arbitration under the subcontracts." *Id.*

In the trial court the Plaintiffs relied upon 15 O.S.1991 §§ 52, 53 [7] for the proposition that they were entitled to rescind the fee agreements because of fraud, but on appeal in No. 81,275 the parties have narrowed the focus of their arguments to *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and its progeny.[8] There also, the parties' agreement contained a clause providing for arbitration of future disputes. Prima Paint sought to rescind the agreement "on the basis of . . . alleged fraudulent inducement." *Id.* The Court determined that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* 388 U.S. at 403–404, 87 S.Ct. at 1805–1806. However, if the alleged fraud is in the inducement of the contract generally, although not of the

arbitration clause in particular, then that issue is left for arbitration. The United State Court of Appeals for the Tenth Circuit has followed the rule. *Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

▆▆▆ We recognized this rule in *Long v. DeGeer,* 753 P.2d 1327 (Okla.1987) where we stated that: "Appellee's assertion that she was induced to enter into the securities account agreement by fraud is itself an arbitrable issue." *Id.* 753 P.2d at 1330 n. 8. Our Court of Appeals followed the rule in *Wetzel v. Covenant Oil Corp.,* 733 P.2d 424 (Okla. App.1986). However, *Long* is not applicable to our case today. This is so because *Long* was decided according to non-Oklahoma law,[9] no claim has here been made that interstate commerce is involved, and the fee agreements stated that Oklahoma law would apply.[10] *Wetzel* has no precedential value,[11] and we now turn to the question before us.

---

7. Section 52 states: "A consent which is not free, is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by Article 5 of this chapter." Section 53 states: "An apparent consent is not real or free when obtained through: 1. Duress. 2. Menace. 3. Fraud. 4. Undue influence. or, 5. Mistake."

8. Appeal No. 83,219 has no briefs on appeal since it is governed by the procedure for Rule 1.203 of the Rules of Appellate Procedure in Civil Cases. Since the briefs in the trial court serve as the briefs on appeal the importance of including therein the proper argument with relevant authority cannot be overemphasized. Although neither Plaintiffs nor Defendants raised *Prima Paint,* both parties did raise 15 O.S. § 802 and Plaintiffs specifically raised a fraud argument and reliance upon § 802. We conclude that the fraud issue was preserved in this case. Appeal No. 81,275 has briefs on appeal because Law Firm's motion to dismiss was filed prior to October 1, 1993, and the Rule 1.203 procedure for summary judgments and dismissals does not apply.

9. *Long* involved the sale of securities with arbitration according to the rules of either the American Arbitration Association or the Board of Arbitration of the New York Stock Exchange. *Long.* 753 P.2d at 1328. In *Long* the arbitration clause appeared to be governed by the laws of the State of New York. *Long,* 753 P.2d at 1330, Opala, J., concurring.

10. The federal arbitration act is applicable when interstate commerce is involved. *Volt Informa-*

*tion Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Ericksen, Arbuthnot, etc. v. 100 Oak Street,* 35 Cal.3d 312, 197 Cal.Rptr. 581, 586–587, 673 P.2d 251, 256 (1983); *Nelson v. Roger J. Lange & Company, Inc.,* 229 Ill.App.3d 909, 171 Ill.Dec. 539, 540, 594 N.E.2d 391, 392 (1992). One court has explained that departure from *Prima Paint* in applying state arbitration statutes would result in making the scope of arbitration depend upon whether interstate commerce was involved. *Ericksen, Arbuthnot, etc. v. 100 Oak Street,* 197 Cal.Rptr. at 586–587, 673 P.2d at 256. No party to this litigation has argued that interstate commerce is involved or that the federal act applies. The federal act is enforced in state court and preempts inconsistent state law when the federal act applies. *Southland Corporation v. Keating,* 465 U.S. 1, 14–16, 104 S.Ct. 852, 860–861, 79 L.Ed.2d 1 (1984). However, even when the federal act applies state arbitration rules apply when agreed to by the parties. See *American Physicians Service Group, Inc. v. Port Lavaca Clinic Associates,* 843 S.W.2d 675, 678 (Tex. App.–Corpus Christi 1992), citing, *Volt Information Sciences, Inc., supra.* The agreement in this case states that disputes "shall be submitted to arbitration in Oklahoma City, Oklahoma, under the provisions of the Uniform Arbitration Act." The "Uniform Arbitration Act" is the title of Oklahoma's Act. 15 O.S.1991 § 801.

11. *Wetzel* was released for publication by order of the Court of Appeals and has persuasive effect but no precedential value. 12 O.S.1991 Ch. 15, App. 2, Rule 1.203.

The question before us is whether we should give the Oklahoma Arbitration Act the same construction as given to the Federal Arbitration Act by the Supreme Court in *Prima Paint.* Courts in most states where it has come up have followed *Prima Paint.*[12] Courts in Louisiana, Minnesota, and Tennessee have declined to do so.[13]

*Prima Paint* is grounded on what is known as the separability doctrine: that the arbitration clause is a severable part of the contract. Thus where there are no allegations of fraud in the making of the specific agreement to arbitrate, that agreement to arbitrate is separable and stands apart from allegations of infirmities with the other provisions of the agreement. *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365, 369–370 (1994). *See U.S. Insulation, Inc. v. Hilro Construction Company, Inc.*, 146 Ariz. 250, 705 P.2d 490, 493 (App.1985), citing, M. Domke, *Law and Practice of Commercial Arbitration,* § 8.01 (1980). But the separability doctrine has not met with universal favor.

The federal arbitration statute was derived from New York's. *Prima Paint*, 388 U.S. at 405 n. 13, 87 S.Ct. at 1807 n. 13. Prior to *Prima Paint* "There is a long line of New York cases holding that an arbitration agreement was generally not separable from the principal contract, ... and, therefore if the substantive provisions of the contract were to fall, the entire contract including an arbitration clause would also fall." *Weinrott v. Carp*, 344 N.Y.S.2d at 854–855, 298 N.E.2d at 46, (citations omitted). The Second Circuit took a contrary view, holding that the arbitration clause is separable. *Weinrott v. Carp*, 344 N.Y.S.2d at 854–855, 298 N.E.2d at 46, citing, *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959). Then after *Prima Paint* the New York courts abandoned their former position and adopted the separability doctrine. See *Ericksen, Arbuthnot, etc. v. 100 Oak Street,* 197 Cal.Rptr. at 585–587, 673 P.2d at 255–256 where the California court explains the history of the New York cases.

The New York courts embraced the separability doctrine because of *Prima Paint* and because an unsupported allegation of fraud could cause delay by allowing its resolution by the New York Courts. *Id.* In other words, unsupported allegations of fraud would frustrate the parties' intent to a speedy remedy by arbitration. One problem with this approach is that even where the separability doctrine is enforced there are still certain claims that may be made, including those that are unsupported, resulting in judicial adjudication and delay of arbitration. For example, allegations concerning the formation of the arbitration agreement itself must be judicially adjudicated prior to arbitration, even when it is ultimately determined that those allegations were insufficient. *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365, 370 (1994); *U.S. Insulation, Inc. v. Hilro Construction Company, Inc.*, 146 Ariz. 250, 705 P.2d 490, 494 (App.1985).

**12.** *See U.S. Insulation, Inc. v. Hilro Construction Company, Inc.*, 146 Ariz. 250, 705 P.2d 490, 493–494 (App.1985); *Ericksen, Arbuthnot, etc. v. 100 Oak Street,* 35 Cal.3d 312, 197 Cal.Rptr. 581, 587–588, 673 P.2d 251, 257 (1983); *National Camera, Inc. v. Love*, 644 P.2d 94, 95 (Colo.App. 1982); *Two Sisters, Inc. v. Gosch and Company*, 171 Conn. 493, 370 A.2d 1020, 1023 (1976); *Nelson v. Roger J. Lange & Company, Inc.*, 229 Ill.App.3d 909, 171 Ill.Dec. 539, 540, 594 N.E.2d 391, 392 (1992); *Goebel v. Blocks and Marbles Brand Toys, Inc.*, 568 N.E.2d 552, 556–557 (Ind. App.1991); *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365, 369–371 (1994); *Quirk v. Data Terminal Systems, Inc.*, 379 Mass. 762, 400 N.E.2d 858, 861 (1980); *Van Syoc v. Walter*, 259 N.J.Super. 337, 613 A.2d 490, 492 (1992), *cert. denied*, 133 N.J. 430, 627 A.2d 1136 (1993); *Weinrott v. Carp*, 32 N.Y.2d 190, 344 N.Y.S.2d 848, 855–856, 298 N.E.2d 42, 47 (1973); *South Carolina Public Service Authority v. Great Western Coal, Inc.*, — S.C. —, 437 S.E.2d 22, 24 (1993). *See e.g.*, Annot., Claim of Fraud in Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract, 11 A.L.R.4th 774, 780–784 (1982).

**13.** *George Engine Co., Inc. v. Southern Shipbuilding Corporation*, 350 So.2d 881, 886 (La.1977); *City of Blaine v. John Coleman Hayes & Associates, Inc.*, 818 S.W.2d 33, 37–38 (Tenn.App. 1991); *Fouquette v. First American National Securities, Inc.*, 464 N.W.2d 760, 762–763 (Minn. App.1991). *Cf. Shearson Lehman Brothers, Inc. v. Kilgore*, 871 S.W.2d 925, 928 (Tex.App.–Corpus Christi 1994), (court noted that general principles of Texas contract law conflicted with the separability doctrine).

■ In the dissenting opinion in *Prima Paint* by Justice Black, joined by Justices Douglas and Stewart, the separability doctrine was rejected with the observation that "if the contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated." *Prima Paint*, 388 U.S. at 412, 87 S.Ct. at 1810. That is the nature of our state law as to contracts in general. *Hooper v. Commercial Lumber Company*, 341 P.2d 596, 598 (Okla.1959).

In Tennessee the court concluded that the *Prima Paint* dissent agreed with policy as expressed by its state legislature in enacting that state's arbitration statutes. *City of Blaine*, 818 S.W.2d at 38. In Louisiana that court concluded that courts have more expertise in resolving issues that go to the validity of a contract, and the court adopted the reasoning of the dissent in *Prima Paint. George Engine Co., Inc.*, 350 So.2d at 885–886.

■ A court must determine the existence of an arbitration agreement in the first instance. 12 O.S.1991 § 80. At this early stage the court is best suited to determine issues such as fraud. Justice Black stated that "courts have far more expertise in resolving legal issues which go to the validity of a contract than do arbitrators." *Prima Paint*, 388 U.S. at 415–416, 87 S.Ct. at 1811–1812, Black, J., dissenting.[14] We have recently recognized that a strong public policy favors arbitration in Oklahoma. *Rollings v. Thermodyne Industries, Inc., supra.* Resolution of claims such as fraud by those who are best suited to perform the task will enhance the arbitration process.

When examining the separability doctrine courts have explained that a statute similar to our § 802(A), as part of an arbitration act, makes arbitration agreements valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract as applied to that arbitration agreement itself, and not the underlying contract. *Quirk v. Data Terminal Systems, Inc.*, 400 N.E.2d at 861. The Minnesota Supreme Court has concluded as a matter of state law that an arbitration agreement cannot be severed from the other contractual provisions contained in a contract. *Atcas v. Credit Clearing Corporation of America*, 292 Minn. 334, 197 N.W.2d 448 (1972).[15] The Minnesota, Tennessee and Louisiana approaches make more sense to us than *Prima Paint* and its separability doctrine. We therefore construe § 802(A) as applying not only to the arbitration agreement itself but also to a contract containing an arbitration agreement.

In Minnesota a party alleging fraudulent inducement in the contract containing an arbitration provision may seek rescission, but cannot seek rescission in part. *Fouquette v. First American National Securities, Inc.*, 464 N.W.2d 760, 762–763 (Minn.App.1991). We have said the same thing in *State ex rel. Burk v. Oklahoma City*, 556 P.2d 591, 592 (Okla.1976), (a party cannot simultaneously both rescind and affirm a contract). Plaintiffs in our cases today do not seek to uphold any provision of the fee agreements.

■ We conclude that allegations of fraud in the inducement of an agreement to arbitrate must be resolved by the court prior to either compelling arbitration or dismissing the case. We also conclude that allegations of fraud in the inducement of the attorney-client contract or agreement generally, apart from the clause to arbitrate, must be resolved by the court prior to either compelling arbitration or dismissing the case. This means that if Plaintiffs allege fraud in the inducement of the arbitration clause itself or

**14.** We recognize that a claim of fraud in the inducement amounts to a claim that the contract is voidable rather than void. *State Ins. Fund v. Brooks*, 755 P.2d 653, 656 (Okla.1988); *Terrill v. Laney*, 200 Okla. 308, 193 P.2d 296, 299 (1948). However, we decline from adopting the reasoning of other courts that such a distinction favors arbitration of such fraud. *See Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365, 371 (1994).

**15.** This conclusion in *Atcas* was based upon several opinions from New York courts that predated *Prima Paint*. *Atcas* is still followed in Minnesota. *Fouquette v. First American National Securities, Inc.*, 464 N.W.2d 760, 762 (Minn. App.1991).

the underlying contract of which the arbitration agreement is a part, the District Court must adjudicate that issue prior to granting the Firm any relief based upon the validity of the arbitration clause.

■ The Law Firm argues that Plaintiffs did not properly preserve their "fraud argument", and did not present facts to support their claims in the trial court. In No. 81,275 the District Court did not consider Plaintiffs' fraud claims in dismissing the suit. The stipulated narrative of the hearing states that the trial judge "having reviewed the agreements, without holding an evidentiary hearing regarding the Plaintiffs' assertion of fraud and without ruling on the merits of the Plaintiffs' claim of fraud, granted Belt's Motion to Dismiss for Lack of Jurisdiction over the Subject Matter." The trial court simply did not determine the sufficiency of Plaintiffs' fraud claims.

The fraud claims were not disputed by Defendants in any filed instrument. Rather, at the hearing before the trial court "Defendant Belt stated that there was no evidence before the court concerning fraud and that Plaintiffs' counsel had neither requested an evidentiary hearing no produced any evidence concerning fraud or any other grounds for revocation of the agreements...."

There were "statements of fact" raised by the Plaintiffs' response in opposition to the motion to dismiss. They stated that the facts showed that the fee agreement containing the arbitration clause should be rescinded "under the circumstances that are present" because of "Jeffery's fraud", and because "the entire attorney-client relationship was based upon the perpetuation of that fraud...." On appeal the Plaintiffs also point to the fact that their petition alleging fraud was verified. Law Firm argues that the allegations in the pleadings and the statements made in the motion are insufficient to bring before the trial court the issue of fraud in the inducement of the arbitration clause, as opposed to fraud in the inducement of the contract generally.

We need not accept Law Firm's invitation to review the sufficiency of Plaintiffs' allegations. The trial court indicated to the Plaintiffs that its decision would be made apart from the fraud claims. In other words, the trial court considered that it was ruling on a motion to dismiss and not one for summary judgment. When a motion to dismiss is converted into one for summary judgment "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment." 12 O.S.1991 § 2012(B). The Plaintiffs were not afforded this opportunity.

This is even clearer in No. 83,219. In 83,219 Law Firm was before the same trial judge, and used its former motion and judgment of the trial court in support of its argument that the Plaintiffs' suit should be dismissed for a lack of subject matter jurisdiction. Plaintiffs' response included two affidavits alleging false representations by Jeffery. Both of these affidavits state that the clients agreed to the arbitration clause because of representations by Jeffery that they claim were fraudulent. These affidavits were not challenged by the Law Firm. The approved narrative statement on appeal shows that prior to the hearing on the motion the Plaintiffs' twice requested a hearing to offer testimony on Jeffery's representations and their effect on the arbitration provision.

■ In *Hughes v. Fidelity Bank N.A.*, 645 P.2d 492 (Okla.1982) we explained that an allegation of fraud raised an issue of fact, that fraud was an exception to the application of an affirmative defense of limitations in that case, and that this precluded dismissal. In our case today, if a relevant contested fact on the fraud claim is shown, then an exception to application of the affirmative defense of arbitration has been presented to preclude dismissal by motion.

■ We conclude that an agreement to arbitrate is voidable when either the arbitration provision of the agreement or the contract containing that agreement is fraudulently induced. The plaintiffs must be given the opportunity to prove the existence of the fraud they allege occurred. The opinions of the Court of Appeals in No. 81,275 and No. 83,219 are vacated, and the judgments of the District Court are reversed. Both proceedings are remanded to the District Court for further action consistent with this opinion.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

WATT, J., concurs in part, dissents in part.

LAVENDER and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

I *dissent* from today's holding that predispute arbitration clauses *are enforceable* under state law. For an explanation of my views, see *Rollings v. Thermodyne Industries, Inc.,* Okl., 910 P.2d 1030, 1037 (1996) (Opala, J., concurring in result). I *would counsel* the court *not* to dichotomize the body of law that governs arbitrable issues by creating exceptions in patent discord with extant federal jurisprudence. I utterly *fail to find any record support* for allowing the arbitration clauses in suit here to be invoked by any defendant other than the contract's lone signatory—Adam J. Jeffery.