FEDERAL DEPOSIT INSURANCE CORPORATION, APPELLANT, *v.* CHANEY, APPELLEE.

(No. 47178—Decided July 10, 1984.)

*Robin G. Weaver,* for appellant.
*Ebert Weidner* and *John A. Hallbauer,* for appellee.

JACKSON, P.J. The F.D.I.C. (Federal Deposit Insurance Corporation) appeals from a judgment finding appellee, E. Bruce Chaney, not liable on two negotiable notes issued by him to the now-defunct Northern Ohio Bank (N.O.B.), following trial by jury.

In September 1974, appellee issued the first note, in the amount of $140,000, to N.O.B. in return for either 3,200 or 3,600 shares of stock in Great Lakes Bancshares, Inc., a company formed to acquire stock in other banks. Appellee was allegedly assured that he would not have to pay the note, because the payments of principal and interest would be derived from dividends or sale of the Great Lakes Bancshares, Inc. stock, which was held as collateral for the note. When the first interest payment came due, apparently dividends from Great Lakes Bancshares, Inc. were not forthcoming, and appellee executed a second note in the amount of $4,000 to pay the interest. Shortly thereafter, in January 1975, appellee became a director of Northern Ohio Bank. A few weeks later, on February 14, 1975, N.O.B. failed, and the Ohio Superintendent of Banks took possession of the assets of N.O.B., pursuant to R.C. Chapter 1113. The F.D.I.C. was appointed receiver under the same provisions, and received title to all assets. As receiver, and pursuant to court approval issued pursuant to former R.C. 1113.05(M), the F.D.I.C. in its corporate capacity took over the assets of N.O.B. It is in its corporate capacity that it brought this action in state court to enforce the two notes against the appellee. The F.D.I.C. contends on appeal that the trial court ought to have directed a verdict in its favor, and ought not to have submitted to the jury, and instructed the jury, on the various defenses to payment raised by appellee.

Appellee asserted several defenses to the notes. According to his brief on appeal, he had the following defenses to payment:

1. Failure of consideration (for the $140,000 note)

2. Lack of consideration (for the $4,000 note)

3. Discharge by payment (of $140,000 note)

4. Material alteration (of $140,000 note)

5. Fraud (with respect to both notes).

Appellee refers to the foregoing defenses throughout his appellate brief as "bona fide, transactional defenses," and contends that the F.D.I.C. should be subject to these defenses. Essentially, appellee contends that the F.D.I.C. stands in the shoes of the N.O.B., and that its rights are no greater than the rights of the N.O.B.

There are three arguments raised in favor of F.D.I.C. The first is that appellee cannot escape liability on the instruments on account of any agreement with N.O.B. which was not approved by

the board of directors of N.O.B. or its loan committee. This is mandated by federal statute, Section 1823(e), Title 12, U.S. Code, which states:

"No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

This statute prevents persons who executed notes or obligations to banks which have been subsequently taken over by the F.D.I.C. from claiming that there was a separate agreement (secret or not secret) that they would not be liable on the obligation, unless the four criteria are complied with.

This statute clearly prevents the appellee from raising as a defense to payment on the note the defense that there existed an oral side agreement under which it was never intended that he should be personally liable on the note. *Black* v. *F.D.I.C.* (C.A. 5, 1981), 640 F. 2d 699, certiorari denied (1981), 454 U.S. 838; *F.D.I.C.* v. *Lattimore Land Corp.* (C.A. 5, 1981), 656 F. 2d 139.

Appellee has other defenses, however, not premised upon side agreements which are ineffective under Section 1823(e), Title 12, U.S. Code. He asserts that the note originally provided that he was to receive *3,600* shares of stock, and that he received only *3,200* and that the note was altered without his permission to reflect the lower number; and that the proceeds of the loan were originally to go to the law firm of Arter & Hadden which was to purchase the stock in his behalf, but that when the proceeds of the loan were issued by check to Arter & Hadden, that law firm refused to accept it, whereupon the check was returned to N.O.B., the loan account was credited with the amount of the check, and another check was issued to R.G. Barhoover, an N.O.B. officer who endorsed it on behalf of N.O.B. The stock was then issued to the appellee, who allegedly returned it to N.O.B. to hold as collateral on the note.

Appellee testified that the morning after signing the note he attempted to cancel the transaction, but that N.O.B. officials told him that it was "too late," and that this was untrue.

Appellee claims that it was *fraud*[1] for N.O.B. officials to tell him that it was too late to cancel the transaction; that the note was *paid and discharged* when Arter & Hadden returned the first check to N.O.B.; that by issuing 3,200 instead of 3,600 shares, there was a *failure of consideration*; that by changing the reference on the note to the number of shares from 3,600 to 3,200, N.O.B. was guilty of *material alteration*[2]; and that since the original note for $140,000 was invalid for the foregoing reasons, the second note in the amount of $4,000 was also invalid for *lack of consideration*, because no interest could be owed to a nonexistent debt.

There was evidence that there was no "fraud" or other defense to these obligations. Appellee was knowledge-

---

[1] This was not fraud in the factum (fraud as to the nature of the document that was executed) which is a real defense, but fraud in the inducement, a personal defense.

[2] This was not material alteration of the *maker's* obligation, which is a real defense, but material alteration of the contract, a personal defense.

able, and was an insider. On previous occasions, he had admittedly loaned money to N.O.B. to make its financial statement "look better." The F.D.I.C. alleges that this is essentially what he was doing on this occasion. But this evidence is susceptible of two interpretations, and would not entitle the F.D.I.C. to judgment as a matter of law. Section 1823(e), Title 12, U.S. Code affords no protection to the F.D.I.C. against these defenses. There is, however, another defense available to F.D.I.C.

In the case of *D'Oench, Duhme & Co.* v. *F.D.I.C.* (1942), 315 U.S. 447, the United States Supreme Court, in an opinion by Justice William Douglas, established two basic principles in cases involving the F.D.I.C. *First,* the rights of parties claiming defenses to notes held by the F.D.I.C. in its corporate capacity are not determined by state law, but by *federal common law.* Thus, the reference by both parties to state law provisions of the commercial paper article of the Uniform Commercial Code as enacted in Ohio (R.C. Chapter 1303) are inapposite. *Second,* the court held that as between the maker of a note, who is aware of defenses to the note but fails to assert them before the failure of the bank occurs and the F.D.I.C., the F.D.I.C. should prevail, on the theory that the maker is estopped from asserting the defenses. The justification for application of this rule of estoppel is that bank examiners, the government, and the public are deceived if a bank is permitted by a maker to retain instruments which appear valid.

Note that the *D'Oench* case did *not* hold that the F.D.I.C. is to be regarded as a holder in due course. The *D'Oench* theory was purely one of equitable estoppel, adopted to facilitate the federal policy of discouraging persons from helping to create the appearance of false assets in the possession of a bank.

This policy is especially pertinent where *bank directors,* such as the appellee herein, lend their names to instruments taken as bank assets which they know, or learn, to be unenforceable. In *F.D.I.C.* v. *de Jesus Velez* (C.A. 1, 1982), 678 F. 2d 371, the federal circuit court ruled that the directors would not be allowed to raise the defense the bank had agreed not to enforce the notes that they had issued to the bank.

In the case at bar, appellee became a bank director after he had entered into this transaction with N.O.B., and after he had notice of a purported defense to the note. He made no formal attempt to rescind the transaction, to have the note declared void, or to notify banking authorities. To all appearances, the note was a valid and enforceable asset of the bank.

Recent federal decisions have in effect extended the *D'Oench* estoppel rule to bar assertion of *all* state law defenses of which the F.D.I.C. lacked actual knowledge. In *Gunter* v. *Hutcheson* (C.A. 11, 1982), 674 F. 2d 862, certiorari denied (1982), 459 U.S. 826, and *Gilman* v. *F.D.I.C.* (C.A. 6, 1981), 660 F.2d 688, it was held that the F.D.I.C., acting in its corporate capacity following a bank failure, is a good faith purchaser for value, and is immune from any defense to an instrument, if it acquired the instrument without actual knowledge of the defense. Had the appellee in this case notified N.O.B., and banking authorities, or the F.D.I.C., of the fact that the instruments held by N.O.B. and bearing his signature were unenforceable, this would have stripped the F.D.I.C. of the immunity conferred by the *D'Oench* estoppel rule, and the good faith purchaser rule of *Gunter* and *Gilman.* But there is no evidence in the record that the appellee even made formal complaint to the bank itself.

Though this rule is harsh, it is no more harsh than the state law holder-in-due-course doctrine. Had N.O.B. conveyed these instruments by way of nego-

tiation to a good faith purchaser for value, who took without notice of any defense or claim under state law, the holder would be equally immune from any of the defenses asserted by the appellee in this case. The protection of the investing public requires that the F.D.I.C. be permitted to enforce the obligations of its predecessor bank without protracted litigation, except in cases where the F.D.I.C. takes the instrument with knowledge of a defense to the obligation.

Accordingly, the decision of the trial court is reversed, and judgment is entered on behalf of the F.D.I.C.[3]

The judgment of the trial court is reversed and judgment is entered on behalf of F.D.I.C.

*Judgment reversed.*

MARKUS and PRYATEL, JJ., concur.

---

[3] Appellee cites three cross-assignments of error in his answer brief on appeal, but does not argue them. Accordingly, these cross-assignments of error are disregarded pursuant to App. R. 12(A).