**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**James M. SULLIVAN, Defendant.**

**No. 87–C–1636.**

United States District Court, D. Colorado.

July 3, 1990.

---

**240**

Jack Englert, Denver, Colo., Joan E. Smiley, Washington, D.C., for plaintiff.

Robert A. Dill, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Federal Deposit Insurance Corporation ("FDIC") commenced this action seeking to recover $200,000, plus interest from the defendant James A. Sullivan. The FDIC alleges that, in violation of 12 U.S.C. § 91, Sullivan withdrew $200,000 from Market National Bank seven days before it was declared insolvent and closed. Jurisdiction is founded on 12 U.S.C. §§ 1819(4) and 94, and 28 U.S.C. § 1345.

This action is currently before me on the FDIC's motion to strike and motion seeking summary judgment against Sullivan's fraud based affirmative defenses and counterclaims. Specifically, the FDIC has moved to strike Sullivan's third (fraud in the inducement), fourth (fraudulent conduct estops FDIC), fifth (bank's conduct constituted waiver) and sixth (deposit agreement was void *ab initio*) affirmative defenses. The FDIC requests summary judgment on Sullivan's first (federal securities fraud), fifth (state securities fraud), seventh (common law fraud), ninth (breach of contract) and eleventh (loss of business opportunity) counterclaims.

Following is a summary of material facts that are undisputed or, if disputed, are assumed for purposes of these motions most favorably to the defendant.

The parties have fully briefed the issues and oral argument would not materially assist my decision.

### I. Facts.

In June 1986, Sullivan became interested in acquiring all or a portion of Market National Bank's ("MNB") stock. However, the Office of the Comptroller of the Currency ("the Comptroller"), MNB's principal regulator, had determined that MNB was insufficiently capitalized. On July 24, 1986, to alleviate the Comptroller's concerns and procure its approval for the transaction, MNB and Sullivan executed a "Deposit Agreement of Special Deposit Account" ("Deposit Agreement"), pursuant to which Sullivan deposited $200,000 into a Special Deposit Account ("the Account") at MNB. On September 1, 1986, Sullivan was elected Chairman of MNB's Board of Directors. He occupied that position until MNB was declared insolvent.

Under the express terms of the Deposit Agreement, if MNB was declared insolvent and placed into receivership (as subsequently occurred), all MNB creditors, including depositors, were to be paid before Sullivan's special deposit would be returned. The funds deposited in the Account were to "be available after exhaustion of Bank's primary capital to absorb operating losses incurred by Bank or losses incurred by Bank on any assets identified as loss by OCC (the Comptroller), by Bank's internal systems, or previously directed for charge-off by OCC." Deposit Agreement at pages 2–3. Prior to September 30, 1986, MNB was to issue to Sullivan common stock, equal in value to that of the Account. However, no stock was ever issued. On January 29, 1987, Sullivan withdrew the $200,000. A week later, on February 5, 1987, MNB was declared insolvent, and the FDIC was appointed receiver.

## II. FDIC's Motion for Partial Summary Judgment.

FDIC's principal argument is that 12 U.S.C. § 1823(e), as amended, prohibits Sullivan from raising the enumerated affirmative defenses and counterclaims. Sullivan asserts that § 1823(e) is inapplicable, and even if applicable, it should be applied as it existed when this case arose, not as since amended.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions, and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. A factual dispute is material only if, under the governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Retroactive Application of Amendment to 12 U.S.C. § 1823(e).

Prior to August 9, 1989, 12 U.S.C. § 1823(e) applied only to the FDIC in its *corporate* capacity. *Beighley v. FDIC*, 868 F.2d 776, 783 (5th Cir.1989). However, Congress amended § 1823(e) when it enacted the Financial Institution Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"). In its present form, 12 U.S.C. § 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation (FDIC) in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
> (1) is in writing,
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committees, and
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

Citing *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), Sullivan argues that FIRREA's amendment to § 1823(e) should be applied prospectively only. If the amendment is applied prospectively, § 1823(e) is inapplicable to this case because, in commencing this action, the FDIC was acting as receiver.

The FDIC, also citing *Bradley*, urges that FIRREA's amendment to § 1823(e) be applied retroactively. Both parties agree that *Bradley* controls whether the amendment to § 1823(e) is applied retroactively or prospectively.

Only one court has examined the question. In *FDIC v. Dalba*, 1990 WL 43750 (W.D.Wis.1990), applying *Bradley*, the court concluded that FIRREA's amendment to § 1823(e) should be applied retroactively. In so concluding, the court held that retroactive application of the new law would not result in manifest injustice to private expectations. "[T]here is almost no legitimate private expectation which would be disrupted by application of the new statute. In contrast, there are substantial public concerns which favor immediate application of the statute." *Dalba*, at 4.

I am particularly persuaded by the *Dalba* court's discussion of the substantial public interest in the new statute's immediate enforcement. "The clear purpose of the statute is to protect the funds of the FDIC in the public interest of maintaining solvency for the regulated institutions and maintaining solvency of the government agency. Immediate enforcement would enhance these goals." *Id.* The cost of bailing out failed banks and savings and loans is increasing exponentially. I conclude that the public interest intended by Con-

gress to be protected would be best served by immediately enforcing Congress' attempt to rectify abuses in the banking industry and thus protect the FDIC's solvency. Therefore, applying *Bradley*, I conclude that the amendment to 12 U.S.C. § 1823(e) should be applied retroactively.

### B. MNB's Alleged Misrepresentations Constitute An "Agreement."

Section 1823(e) prohibits the use of "secret agreements" to diminish or defeat any right, title or interest that the FDIC acquires. Any properly documented agreement (one that satisfies the four elements enumerated above) can be enforced, and by its enforcement diminish or defeat the FDIC's interest. In addition, if the agreement is void *ab initio*, § 1823(e) is inapplicable.

A two step analysis is required to determine whether § 1823(e)'s prohibition applies: (1) was there a valid agreement; and (2) does the agreement satisfy § 1823(e)'s documentation requirements? Sullivan asserts that the only agrement is the Deposit Agreement. The FDIC asserts that the misrepresentations of which Sullivan complains constitute an agreement as that term is used in § 1823(e).

Under the controlling case law, misrepresentations, even those amounting to fraud, constitute § 1823(e) "agreements." Two recent cases are directly on point. In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court decided the very narrow issue, "whether, in an action brought by the FDIC in its corporate capacity[1] for payment of a note, § 1823(e) bars the defense that the note was procured by fraud in the inducement even when the fraud did not take the form of an express promise." *Langley*, 108 S.Ct. at 400. A unanimous court concluded that § 1823(e)'s purpose, allowing federal and state bank examiners to rely on a bank's records in evaluating the worth of a bank's assets, was best served by construing "agreement" to in-

clude fraud in the inducement. In addition, the court held that the statute applies even if the FDIC is aware of the fraud.

*Langley* can be distinguished from the instant case. In *Langley*, a bank brought an action against the makers of a promissory note. The makers claimed that the bank orally misrepresented both the loan terms and the property they were purchasing. In the case at bar, Sullivan asserts, *inter alia*, that MNB and its directors failed to disclose material facts about the bank's financial condition. Therefore, I must decide whether the Supreme Court's analysis in *Langley* should be applied in cases involving material omissions rather than overt misrepresentations.

In *FDIC v. Bell*, 892 F.2d 64 (10th Cir. 1989), a case very similar to the instant dispute, the Tenth Circuit answered the question affirmatively. There, on Continental Illinois National Bank & Trust's ("CINB") recommendation, Bell purchased Oklahoma Refining Company ("ORC"), and guaranteed its obligations. An internal CINB report valued ORC's property at $22.3 million less than estimates used in recommending that Bell that purchase ORC. CINB never informed Bell of the new, lower valuation. One year after Bell purchased ORC, it filed bankruptcy. To collect on its guarantees, CINB commenced an action against Bell. Asserting that CINB's misrepresentations had induced him to buy ORC, Bell counterclaimed for securities and common law fraud.

Relying on *Langley*, the FDIC moved for summary judgment on Bell's counterclaims. The district court granted the FDIC's motion, and the court of appeals affirmed. "If fraudulent warranties fall within the reach of the statute [§ 1823(e) ], it is irrelevant whether the fraud was caused by overt misrepresentation or deceitful omission." *Bell*, at 66.

Under the authorities cited above, there is no question that the term "agreement," as used in 12 U.S.C. § 1823(e), includes fraudulent misrepresentations and material

---

**1.** Although the FDIC was acting in its corporate capacity, as noted above, § 1823(e) now applies to actions taken by the FDIC in its role as receiver. Therefore, no distinction can be made between cases involving the FDIC acting in its corporate capacity and the instant case.

 

omissions. Therefore, unless the misrepresentations are sufficiently documented, Sullivan can not raise them to defeat or diminish the FDIC's interest in the account.

### III. Conclusion.

Applying *Bradley,* I conclude that the 1990 amendment to § 1823(e) should be applied retroactively. Applying *Langley* and *Bell,* I conclude that fraudulent misrepresentations and material omissions are agreements within § 1823(e)'s coverage. Sullivan has offered no evidence that the misrepresentations or omissions are documented. Therefore, I conclude that § 1823(e) prohibits Sullivan from raising any defense or asserting any counterclaim based upon MNB's alleged misrepresentations or material omissions.

Sullivan asserts that the validity of the deposit agreement is a material fact rendering summary judgment inappropriate. I disagree. The FDIC has only moved for summary judgment as to Sullivan's fraud based counterclaims and affirmative defenses. Granting the FDIC's motion will not determine the parties' respective rights and liabilities pursuant to the Deposit Agreement, or its validity. For instance, as the Supreme Court noted in *Langley,* if Sullivan can show fraud in the factum, the agreement would be void *ab initio*, and § 1823(e) would be inapplicable.

The FDIC has moved to strike four of Sullivan's affirmative defenses, and for summary judgment as to five of Sullivan's counterclaims. Each of these defenses and counterclaims is based upon alleged fraud by MNB or its directors. Because, as a matter of law these defenses and counterclaims must fail, the FDIC is entitled to summary judgment.

Accordingly, IT IS ORDERED that:

(1) The FDIC's motion for partial summary judgment striking Sullivan's third, fourth, fifth, and sixth affirmative defenses is granted; and

(2) The FDIC's motion for partial summary judgment as to Sullivan's first, fifth, seventh, ninth and eleventh counterclaims is granted.

(3) Sullivan's first, fifth, seventh, ninth and eleventh counterclaims are dismissed.