**STEWART TITLE GUARANTY COMPANY, Plaintiff/Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Statutory Successor to**

**Resolution Trust Corporation, in its capacity as Conservator for Cherokee Valley F.S.A., Defendant/Cross–Plaintiff/Appellant;**

**and**

**Alfonso Charles and Gwendolyn Charles, Defendants/Cross–Defendants/Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 27, 1996.

Application for Permission to Appeal Denied by Supreme Court Dec. 23, 1996.

Ted C. Raynor of Leitner, Warner, Moffitt, Williams, Dooley & Napolitan, P.L.L.C., Chattanooga, for appellant.

John C. Cavett, Jr. of Cavett & Abbott, Chattanooga, for Stewart Title Guaranty Company.

Selma Cash Paty of Paty, Rymer & Ulin, P.C., Chattanooga, for Alfonso Charles & Gwendolyn Charles.

## OPINION

SUSANO, Judge.

This litigation finds its genesis in the aftermath of a failed banking institution. In 1984, Cherokee Valley Federal Savings Bank (Bank) loaned appellees Alfonso and Gwendolyn Charles (Charles) $45,750 to finance

the purchase of property on Signal Mountain, Tennessee. The Charles executed and delivered to the Bank a 90–day note for $45,750 and a deed of trust on the purchased property, which was municipally known as 1302 Spencer Road.

Approximately a year later the Charles sold the property to John and Christina Harr, who, as a part of the transaction, sought a title insurance policy from appellee Stewart Title Guaranty Company (Stewart Title). Stewart Title's agent called the Bank, gave it the name of the borrowers, i.e., the Charles, and the correct address of the property, and then asked for the amount of the payoff on the note. An employee of the Bank gave Stewart Title's agent the wrong loan number and amount, stating that the payoff was $14,601.73. In fact, the correct payoff was over $43,000, as the Charles had paid a total of only $2,653.76 toward the debt. At closing, Stewart Title tendered a check in the amount of $14,601.73 to the Bank. The Bank accepted and negotiated the check without comment. Convinced that the note was then paid in full, and that it and the deed of trust would be released, Stewart Title wrote the Harrs a policy of title insurance.

The Bank never marked as paid, nor released, the note and deed of trust. On June 12, 1992, the United States Treasury Department ordered the Bank closed, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver.[1] In 1994, the FDIC initiated foreclosure proceedings on the property. At that point, the property had changed hands twice since the Charles–to–Harrs transaction.

Stewart Title filed suit, arguing that the FDIC should be equitably estopped from foreclosing under the circumstances. The Chancellor, after a non-jury trial, agreed, issuing a permanent injunction against foreclosure and declaring the deed of trust released. The FDIC appeals, raising the following issues for review:

1. Was the Chancery Court without power to enjoin foreclosure by virtue of 12 U.S.C. § 1821(j)?

1. The FDIC is the statutory successor to the Resolution Trust Corporation, which was initially appointed receiver in this case. For simplicity we shall refer to the receiver as "the FDIC" throughout this opinion.

2. Did the Chancellor err in applying the doctrine of equitable estoppel to enjoin foreclosure and in decreeing release of the deed of trust?

3. Does the operation of 12 U.S.C. § 1823(e) bar Stewart Title's reliance upon any negligence on the part of the bank?

Finding no error in the Chancellor's judgment, we affirm.

## I

The relevant facts are undisputed. The Charles purchased the property at 1302 Spencer Road on October 18, 1984. The bank loaned them the purchase price, $45,750, and in return they executed a note for that amount and a deed of trust reflecting the property as security for the note. The note, by its terms, was due in full in 90 days.

On August 30, 1985, the Charles conveyed the property by general warranty deed to the Harrs. The Harrs sought a title insurance policy from Stewart Title, and so an agent of Stewart Title, Ms. Sharon Inglis, called the Bank for the payoff on the Charles' outstanding note. Inglis provided the Bank with the Charles' names, the address of the subject property, i.e., 1302 Spencer Road, and "probably a legal description of the property." She did not know the Bank's ID number for the loan because it was not reflected on the note or the deed of trust. An employee of the Bank told Inglis the loan number was "4701254" and that the payoff for the loan was $14,601.73. During the conversation, Inglis recorded this information in her notes.

In fact, the correct loan number was "C–280" and the correct payoff was over $43,000 because the Charles had then paid only $2,653.76 toward the debt.[2] The apparent source of this error was that the Charles had several other outstanding loans with the Bank at the time, and the incorrect loan number and payoff which the Bank gave Inglis apparently corresponded with another of the Charles' loans. However, there was only one loan secured by the property at the

1302 Spencer Road address, and that was loan number "C–280."

At closing, Stewart Title withheld $14,601.73 from the Charles' proceeds from the sale. The Charles received a net amount of $44,547.44. Stewart Title tendered, as full payment, a check in the amount of $14,601.73 to the Bank; the check stated on its face, "1st mortgage payoff" and "1302 Spencer Ave." Inglis also provided the Bank a transmittal letter stating, "We are enclosing our check in the amount of $14,601.73 on the above subject for payoff." The "subject" was listed as "Loan No. 4701254—Alfonso Charles." The Bank accepted and negotiated the check. Stewart Title, convinced that title to the property was then free and clear of the Charles' deed of trust, wrote the Harrs a title insurance policy which did not list that encumbrance. The Bank never released the note and deed of trust and thus it remained outstanding on its books.[3]

The Charles testified that sometime around 1988, the Bank approached them regarding the payment of the loan on the Spencer Road property. They hired a lawyer and some negotiations ensued, but Mrs. Charles testified that they never reached a resolution. In any event, it appears the Bank was aware of some problem regarding the loan, but did not demand payment on loan "C–280" at that time or thereafter.

On June 12, 1992, the Bank was ordered closed and the FDIC took over as receiver for that institution. In the meantime, the Harrs had sold the property to another party, who in turn sold it to Ms. Sharon Skiles. Ms. Skiles, who is not a party to these proceedings, was the owner in 1994 when the FDIC initiated foreclosure on the property.

Stewart Title filed suit to enjoin the foreclosure on equitable estoppel grounds. The FDIC filed a cross-claim against the Charles for the overpayment they received at the closing. The Chancellor ruled that the cross-claim was barred by the applicable statute of limitations and the FDIC has not appealed

---

**2.** There is nothing in the record to indicate that Stewart Title was aware of the Charles' payments on the debt.

**3.** Interestingly enough, the Bank also did not release the note and deed of trust to which it now contends the payoff of $14,601.73 was actually related.

this ruling. The Chancellor applied the doctrine of equitable estoppel, enjoining the FDIC from foreclosure and declaring the deed of trust released.

## II

In this non-jury case, our review is *de novo* upon the record of the trial court's proceedings; however, that record comes to us accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

■ We first address whether 12 U.S.C. § 1821(j) precludes the Chancery Court from enjoining foreclosure on the note, as the FDIC argued below. The statute provides as follows:

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j). Stewart Title relies on a recent U.S. Supreme Court decision, *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), construing 12 U.S.C. § 1821. The *O'Melveny & Myers* Court stated the following:

Section 1821(d)(2)(A)(i), which is part of a Title captioned "Powers and duties of [the FDIC] as ... receiver," states that "the [FDIC] shall ... by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution ..." [citation omitted] This language appears to indicate that the FDIC as receiver "steps into the shoes" of the failed S & L, ... obtaining the rights *"of* the insured depository institution" that existed prior to receivership. Thereafter, in litigation by the FDIC asserting the claims *of* the S & L ... "any defense good against the original party is good against the receiver."

\*   \*   \*   \*   \*   \*

It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where

some provision in the extensive framework of FIRREA provides otherwise.

*O'Melveny & Myers,* 512 U.S. at 86, 114 S.Ct. at 2054 [citations omitted; emphasis and brackets in original]. In its reply brief, the FDIC states the following regarding this case:

The FDIC in this case accepts the Supreme Court's holding in *O'Melveny & Myers* which provides that the FDIC steps into the shoes of a failed institution such that a defense good against the institution would apply against the FDIC as receiver. What both the trial court and the appellee overlook is that Stewart Title does not have a valid defense against the failed institution.

Thus, we affirm the Chancellor's ruling that, under *O'Melveny & Myers,* 12 U.S.C. § 1821(j) does not preclude the court from enjoining the foreclosure if Stewart Title has a valid state law defense.

## III

■ Turning to the merits of the defense relied upon by Stewart Title, i.e., equitable estoppel, we find that it has validity. The Chancellor, in his Memorandum Opinion, applied the equitable estoppel doctrine to the facts of this case as follows:

Equitable estoppel requires proof of a number of items. There must be words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of affairs.

In this case, Stewart Title says that the representation of the closing balance from [the Bank] are the words that they're relying on. Certainly no one other than [the Bank] would have superior knowledge of .... the payoff balance on the mortgage.

They also rely on the fact that nothing occurred from 1985 until December of 1994, late 1994, when foreclosure was commenced. No effort was made to collect interest from the Charles; no effort was made to enforce this 90–day loan that existed on the property.

The second element that Stewart Title must prove is wilfulness or negligence with regard to the acts, conduct or acquies-

cence.... [C]ertainly the Court has no problem finding negligence in first, giving an erroneous payoff balance, and secondly, doing nothing to correct it, even after it was obviously known to them in 1988. Thirdly, there must be a detrimental reliance by the other party upon the state of the things that are indicated.

Well, in this case, based upon the representation of the payoff figure and the fact that a check was sent for that payoff figure, Stewart Title issued an insurance policy guaranteeing that that property was free and clear of any defects in the title, and specifically free and clear of any mortgage owed to [the Bank].

An additional element which must be shown is that Stewart Title relied upon the statements or actions of [the Bank] without an opportunity to know the truth. At no point from August of 1985, until foreclosure proceedings were commenced, did Stewart Title have any opportunity to know the true state of affairs. [The Bank] and no one on their behalf ever did anything to place ... Stewart Title on notice of any error that had been committed in giving an erroneous payoff balance.

Finally, there must be an action based on that reliance that results in a detriment to the one who acted on that representation. In this case, Stewart Title has been subjected to a claim on the insurance policy at issue, which if it is compelled to pay, certainly will result in a detriment to Stewart Title.

\*   \*   \*   \*   \*   \*

In this case, the [Bank], by virtue of equitable estoppel, would be precluded from asserting the rights that it has under the deed of trust.

We agree completely with the analysis of the Chancellor. *See Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn.App.1993), *Reed v. Washington County Bd. of Ed.*, 756 S.W.2d 250, 255 (Tenn. 1988), *Chattem, Inc. v. Provident Life & Acc.*

*Ins. Co.*, 676 S.W.2d 953, 955 (Tenn.1984). The FDIC argues that the Bank was not negligent, in that the loan number given to Stewart Title correctly matched the payoff amount for that loan number. We disagree. Although the FDIC's statement is factually correct, it misses the point; which is, when provided with correct information as to the borrowers' names and the address of the property, the Bank gave Stewart Title the wrong loan number, and consequently, and more importantly, the wrong payoff amount. Further, the cases on equitable estoppel do not so much require a showing of "negligence" as

> [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert.

*Robinson*, 857 S.W.2d at 563. Quite simply, this appears to us to be a classic case for the application of the doctrine of equitable estoppel.

### IV

■ The FDIC argues on appeal that the operation of 12 U.S.C. § 1823(e)[4] prevents Stewart Title from relying upon the Bank's negligence and the equitable estoppel doctrine. As the Charles' brief points out, however, there is nothing in the record before us indicating that this argument was presented to the Chancellor at trial. It was not affirmatively pled by the FDIC. Rule 8.03, Tenn.R.Civ.P. requires that all affirmative defenses be set forth in a defendant's response. Furthermore, the transcript reveals that it was not argued to the Chancellor at trial, nor did he make a ruling on the application of the statute, although he specifically addressed the § 1821(j) issue.

Our jurisdiction is appellate only, T.C.A. § 16-4-108(a)(1), and thus the rule has long been well-settled that

> 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement ...

---

**4.** 12 U.S.C. § 1823(e) provides, in pertinent part, as follows:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section

[t]his Court can only consider such matters as were brought to the attention of the trial court and acted upon or [pretermitted] by the trial court.

*Irvin v. Binkley,* 577 S.W.2d 677, 679 (Tenn. App.1978); *Thomas v. Noe,* 301 S.W.2d 391, 394 (Tenn.App.1956); *Foley v. Dayton Bank & Trust,* 696 S.W.2d 356, 359 (Tenn.App. 1985). This issue was not addressed by the trial judge or pretermitted by him; it cannot be raised for the first time on appeal.

The Chancellor's judgment is affirmed. Costs on appeal taxed and assessed to appellant. This case is remanded for collection of costs assessed below, pursuant to applicable law.

GODDARD, P.J., and McMURRAY, J., concur.