1999 OK 80

**CINCO ENTERPRISES, INC.,**
**Plaintiff/Appellant,**

v.

**Pasquale BENSO, Defendant/Appellee,**

v.

**American Financial Network, Inc.,**
**Additional Defendant/Appellant.**

**No. 89,435.**

Supreme Court of Oklahoma.

Sept. 28, 1999.

Rehearing Denied Dec. 13, 1999.

---

D. Benham Kirk, Jr., Michael C. Turpen, R. Scott Thompson, Oklahoma City, Oklahoma, for Appellee/Petitioner.

Michael C. Bigheart, Enid, Oklahoma, for Appellants.

¶1   KAUGER, J.:

¶2   The issues[1] presented are: 1) whether the cause is governed by the law of the case in *Cinco Enterprises, Inc. v. Benso,* 1994 OK 135, 890 P.2d 866 [*Cinco I*] holding that federal law did not bar the defense of failure of consideration to the guaranty contract; and 2) whether sufficient evidence of consideration was presented to support an award for antecedent debts under the guaranty agreement.  We hold that: 1) under the facts presented, no inequity results in the application of the settled law of *Cinco I* determining that federal law was not a bar to the defense of failure of consideration; and 2) extending antecedent debts contemporaneous with the execution of the guaranty agreement was sufficient consideration to support liability for the payment of two of the five notes.

## FACTS

¶3   Between June of 1984 and April of 1985, Steve J. Benso executed five notes in favor of the Norman Bank of Commerce [Bank/NBC].[2] The notes were not covered by a guaranty agreement when executed.  However, Steve Benso received a sixth loan for $11,100.00 on August 9, 1985, which was guaranteed by his father, the defendant/appellee, Pasquale Benso [Benso/guarantor].  The guaranty contract provides in pertinent part:

"The undersigned Guarantor(s) hereby requests the Lender to give and continue to give the above name [sic] Customer(s) credit, and in consideration for any credit given, the undersigned Guarantor hereby absolutely and unconditionally guarantees payment on demand ... Guarantor agrees to pay ... any and all existing and future

indebtedness and liabilities of every kind, including all renewals, extensions, and modifications thereof from Customer(s) to Lender, however and whenever created or arising, or evidenced, or acquired ..."

¶4   The Bank became insolvent in November of 1986, and the Federal Deposit Insurance Corporation [FDIC] was appointed as liquidating agent.  In March of 1987, the plaintiff/appellant, Cinco Enterprises, Inc. [Cinco], purchased all six notes from the FDIC. Pursuant to a settlement offer, Benso paid Cinco $5,550.00 in satisfaction of the sixth note.  When no agreement could be reached on the five remaining notes, Cinco filed suit against both Steve and Pasquale Benso on November 25, 1988.  Steve Benso discharged his liability in bankruptcy, and Cinco proceeded against the guarantor.

¶5   When Benso's counsel did not appear for a pre-trial conference on August 24, 1989, Cinco obtained a default judgment.  Although the default judgment was vacated and a minute order was filed indicating the motion to vacate had been sustained,[3] Cinco filed an affidavit of judgment in December of 1991.  In March of the following year, Cinco instituted garnishment proceedings.  On March 26, 1992, Benso was notified that accounts in two banks had been garnished and that no checks would be honored.  Benso could not reach his attorney of record.  However, another attorney visited with him about the problem and contacted Cinco.  Subsequently, Cinco issued an order of discharge and released the lien judgment.

¶6   Finding that Benso was obligated on all the notes, the trial court granted summary judgment on July 2, 1992.  Noting arguments of the parties concerning the D'Oench Duhme doctrine [*D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)] and its statutory

---

1.   The Court of Civil Appeals affirmed the portion of the judgment relating to Benso's claims against Cinco and AFN. Neither Cinco nor AFN filed a petition for certiorari.  Therefore, these issues are not presented for review. *Hough v. Leonard,* 1993 OK 112, ¶18, 867 P.2d 438.

2.   Indebtedness was incurred as follows: Note No. 1—June 22, 1984, for $18,301.57; Note No.

2—December 14, 1984, for $27,500.00; Note No. 3—January 10, 1985, for $2,500.00; Note No. 4—February 21, 1985, for $3,000.00; and note No. 5—April 25, 1985, for $2,000.00.

3.   The October 2, 1989 minute order is initialed by the judge and provides in pertinent part:
"... Defendant not present—Motion to Vacate Default Judgment Sustained...."

counterpart, 12 U.S.C. § 1823(e),[4] the Court of Civil Appeals affirmed.[5] We reversed on certiorari in *Cinco I* holding that: 1) because no secret agreement existed which might diminish a bank asset, the D'Oench, Duhme doctrine did not pre-empt the state law defense of failure of consideration; 2) the consideration for the promise to answer for the five notes executed prior to the guaranty agreement was a material fact not proven on summary judgment; 3) an inquiry into the facts surrounding the guaranty—which did not recite consideration—was appropriate; and 4) a question of fact remained on the issue of accord and satisfaction.

¶ 7   While appeal was pending in *Cinco I*, Benso filed a separate action against Cinco. On remand, this cause was consolidated with Benso's assertions of wrongful garnishment, negligence, negligence *per se*, breach of contract, abuse of process and intentional infliction of mental distress against Cinco and an added defendant, American Financial Network, Inc. [AFN]. The jury found in favor of the guarantor on both the contractual and tort claims, and it awarded Benso $25,000 in actual damages and $141,059.25 in punitive damages. The trial court denied motions for judgment notwithstanding the verdict and for new trial and remitted actual damages to $12,500 and punitive damages to $50,000. Although the Court of Civil Appeals upheld the remitted monetary awards, it reversed on the issue of liability determining that Benso's state law defenses were barred by 12 U.S.C. § 1823(e). We granted certiorari on June 22, 1999.

## I.

¶ 8   **UNDER THE FACTS PRESENTED, THE CAUSE IS GOVERNED BY THE HOLDING IN *CINCO ENTERPRISES, INC. V. BENSO*, 1994 OK 135, 890 P.2d 866 [*CINCO I*] THAT THE GUARANTY AGREEMENT IS SUBJECT TO THE DEFENSE OF FAILURE OF CONSIDERATION.**

¶ 9   Benso relies upon *Cinco I* for the proposition that the state law defense of failure of consideration is available to avoid liability on the five notes executed before the guaranty contract was signed. Cinco recognizes that *Cinco I* holds that there was no secret agreement barring the state law defense under the D'Oench, Duhme doctrine. Nevertheless, it asserts that failure of the Court to specifically address the doctrine's statutory counterpart, 18 U.S.C. § 1823(e),[6] precludes application of the cause as the settled law of the case. We disagree.

¶ 10   The settled-law-of-the-case doctrine operates to bar relitigation in the same case issues decided in the prior appel-

---

4.  Title 12 U.S.C. § 1823(e) (1996) provides in pertinent part:

    "Agreements against interests of Corporation
    (1) In general
    No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
    (A) is in writing,
    (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
    (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
    (D) has been, continuously, from the time of its execution, an official record of the depository institution...."

Although § 1823(e) has been amended since the guaranty agreement was signed, the requirements for the writing under the current of the statute are virtually identical to those in existence in 1985. Additionally, the federal courts have held that amendments to the statute apply retroactively to causes pending when amendments are passed. *Reding v. FDIC*, see note 13, infra; *FDIC v. Sullivan*, 744 F.Supp. 239, 241 (D.Colo.1990); *Carico v. First Nat'l Bank of Bogata*, 734 F.Supp. 768, 770 (E.D.Tex.1990). Therefore, references are to the current version.

5.  The Court of Civil Appeals' opinion, promulgated on December 7, 1993, provides in pertinent part:
    "... Appellant also objected to the motion for summary judgment on the grounds that Appellee was not entitled to judgment as a matter of law because the codification of the D'Oench Duhme doctrine, 12 U.S.C. § 1823(e) did not offer protection to the FDIC *as receiver* at the time of this action...." [Emphasis in original.]

6.  Title 18 U.S.C. § 1823(e), see note 4, supra.

late opinion.[7] The prior opinion settles and determines all questions actually presented and all questions existing in the record and involved in the decision by implication.[8] Although the record in a prior cause is not a part of the appeal in a subsequent action, we take judicial notice of our former opinions to determine the binding effect of the cause in a subsequent action.[9] In *Cinco I*, the Court of Civil Appeals opinion referred to 12 U.S.C. § 1823(e);[10] both Cinco and Benso argued the statute's legal effect in their respective

appellate briefs before this Court;[11] and the opinion cites the statute.[12] Despite the presentation of arguments concerning the statute, this Court determined in *Cinco I* that no secret agreement existed barring the failure of consideration defense.

■ ¶ 11 We recognize that, in the majority of cases, state law and other defenses to the D'Oench, Duhme doctrine and its statutory codification, 18 U.S.C. § 1823(e), have been rejected.[13] Nevertheless, when an ap-

---

7. *Fent v. Oklahoma Natural Gas*, 1994 OK 108, ¶ 14, 898 P.2d 126; *Panama Processes, S.A. v. Cities Serv. Co.*, 1990 OK 66, ¶ 11, 796 P.2d 276.

8. *Fent v. Oklahoma Natural Gas*, see note 7, supra; *Handy v. City of Lawton*, 1992 OK 111, ¶ 13, 835 P.2d 870; *Jones v. Medlock*, 1948 OK ——, 201 Okla. 109, 202 P.2d 212–213.

9. *Fent v. Oklahoma Natural Gas*, see note 7, supra; *Reeves v. Agee*, 1989 OK 25, ¶ 17, 769 P.2d 745; *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76, ¶ 8, 713 P.2d 589.

10. See note 5, supra, quoting from the Court of Civil Appeals' opinion.

11. Benso's brief, filed on May 24, 1993, provides in pertinent part in the table of contents at p. i:
"... PROPOSITION III.
THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER OR NOT NBC'S AGREEMENT LIMITING THE SCOPE OF APPELLANT'S GUARANTY IS PRECLUDED BY 12 U.S.C. § 1823(e). ..."
The table of contents at p. i of Cinco's answer brief, filed on June 21, 1993, provides in pertinent part:
"... PROPOSITION I
AS SUCCESSOR TO FDIC, CINCO IS ENTITLED TO THE PROTECTIONS OF THE *D'OENCH, DUHME* DOCTRINE, 12 U.S.C. § 1823(E) AND/OR THE FEDERAL HOLDER IN DUE COURSE DOCTRINE.
A. THE *D'OENCH, DUHME* DOCTRINE.
B. 12 U.S.C. § 1823(e).
C. THE FEDERAL HOLDER IN DUE COURSE DOCTRINE.
D. THE INSTANT APPEAL. ..."
Benso's reply brief, filed on June 12, 1993, provides in pertinent part at p. i of the table of contents:
"... PROPOSITION III
THE FACTS AND CIRCUMSTANCES OF THIS CASE DO NOT WARRANT RETROACTIVE APPLICATION OF 12 U.S.C. § 1823(e) ..."
Cinco's supplemental reply brief opposing Benso's petition for certiorari also discusses 12 U.S.C. § 1823(e) at pp. 2–3, providing in pertinent part:

"... The D'Oench doctrine has been adopted by statute at 12 U.S.C. Section 1823(e). The statute makes unavailable any side agreement-based defense with respect to a note such as the one sued upon below unless the debtor can show certain requirements are met.... Therefore, in the event this Court finds that mutual mistake would otherwise apply in this case, the D'Oench doctrine and 12 U.S.C. Section 1823(e) make it clear that Appellant may not use the defense of the proffered side agreement at variance with the plain and unambiguous language of the contract...."

12. *Cinco Enterprises, Inc. v. Benso [Cinco I]*, 1994 OK 135, ¶ 8, 890 P.2d 866.

13. *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987); *FDIC v. Zook, Bros. Constr. Co.*, 973 F.2d 1448, 1451 (9th Cir. 1992); *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1344 (1st Cir.1992); *Reding v. FDIC*, 942 F.2d 1254, 1258 (8th Cir.1991); *FDIC v. McCullough*, 911 F.2d 593, 599–601 (11th Cir. 1990) *reh'g denied*, 920 F.2d 13 (11th Cir.1990) *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir.1989) *cert. denied*, 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989) [Applying Texas law.]; *FDIC v. Galloway*, 856 F.2d 112, 114 (10th Cir.1988); *FSLIC v. Murray*, 853 F.2d 1251, 1255 (5th Cir.1988); *FDIC v. Wood*, 758 F.2d 156, 160 (6th Cir.1985) *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *FDIC v. Wrapwell Corp.*, 922 F.Supp. 913, 925 (S.D.N.Y.1996); *Hill v. Imperial Savings*, 852 F.Supp. 1354, 1372 (W.D.Texas 1992); *FDIC v. Manatt*, 688 F.Supp. 1327, 1330 (E.D.Arkansas 1988) *aff'd*, 922 F.2d 486 (8th Cir.1991), *cert. denied*, 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); *In re First City Financial Corp.*, 61 B.R. 95–96 (Bkrtcy.D.N.M.1986); *Opton, Inc. v. FDIC*, 647 A.2d 1126, 1130 (D.C. 1994); *FDIC v. Alto Constr. Co., Inc.*, 109 N.M. 165, 783 P.2d 475, 478 (1989); *FDIC v. Chaney*, 19 Ohio App.3d 277, 484 N.E.2d 174, 176 (1984); *RTC Mortgage Trust 1994–S2 v. Shlens*, 62 Cal. App.4th 304, 72 Cal.Rptr.2d 581, 590 (1998) *reh'g denied, review denied* (1998); *FDIC v. Adams*, 187 Ariz. 585, 931 P.2d 1095, 1100–01 (1996), *review denied*. But see, *FDIC v. Aetna*

pellate court rules upon an issue, as we did in *Cinco I*, that ruling becomes the law of the case and controls all subsequent proceedings in the action which will not be reversed on appeal.[14] Only when the prior decision is found to be erroneous, and the Court is convinced that failure to reverse will result in a gross or manifest injustice will the cause be overturned.[15]

■ ¶ 12 The guaranty agreement does not identify the note or notes guaranteed. However, on August 14, 1985, James K. West [West], Executive Vice President of NBC, dictated a memorandum to Steve Benso's file. The memorandum refers only to the sixth note executed in an amount "slightly over $11,000.00." The memorandum states that "[Steve Benso's] father, Patsy Benso, has guaranteed **the note.**"[16] [Emphasis provided.] West's affidavit, filed as an exhibit to Benso's motion for summary judgment in *Cinco I*, indicates that neither the Bank nor

Benso ever intended that the guaranty was to cover anything other than note number 6 for $11,100.00. The understanding expressed in the bank officer's affidavit is supported by testimony elicited from Steve Benso [17] and from the guarantor at trial.[18] When the guaranty was executed, neither the guarantor nor the bank's representative intended that the guaranty would cover anything other than the sixth note for $11,100.00.

¶ 13 Under the bank's standard procedures, it would appear that the guaranty was limited to a single obligation. In addition to providing an understanding of the situation under which the guaranty was executed, Mr. West's affidavit also outlines NBC'S practices in relation to guaranty agreements— specifically that: 1) guaranty agreements were filed only in files to which they pertained; and 2) separate guaranty agreements were required for each individual loan extended.[19] Here, the guaranty agreement was

*Casualty & Surety Co.*, note 21, infra; *FDIC v. Alvarez Lau*, see note 21, infra; *In re Pernie Bailey Drilling Co.*, note 21, infra; *Stewart Title Guaranty Co. v. FDIC*, note 21, infra.

14. *Gay v. Hartford Underwriters Ins. Co.*, see note 15, infra; *Matter of Estate of Eversole*, 1994 OK 114, ¶ 8, 885 P.2d 657.

15. *Gay v. Hartford Underwriters Ins. Co.*, 1995 OK 97, ¶ 17, 904 P.2d 83; *McDonald v. Humphries*, 1990 OK 51, ¶ 12, 810 P.2d 1262; *Cavett v. Peterson*, 1984 OK 59, ¶ 14, 688 P.2d 52, 57; *Severson v. Roberts*, 1946 OK ——, 197 Okla. 121, 168 P.2d 615, 617; *Powell v. United Mining & Milling Co.*, 1924 OK ——, 107 Okla. 170, 231 P. 307, 314.

16. The August 14, 1985, memo provides in pertinent part:

"... Steve has been into the bank and we have discussed his indebtness [sic] to our bank and as well as other institutions in detail. Steve is in a liquidity crisis and needed slightly over $11,000.00 to resolve his situation. We have made Steve a loan for slightly over $11,000.00 The proceeds of which were used for current operating capital and his father, Patsy Benso, has guaranteed the note. Patsy is a long term Norman resident and is the owner and operator of Othello's restaurant and is a substantial individual and his performance in the past has always been excellent [sic]...."

17. Transcript of jury trial, December 5, 1996, Steve Benso testifying, providing in pertinent part at p. 16:

"... Q What comments did Patsy make?

A. He told Mr. West that he wanted to definitely make sure he was guaranteeing that amount of money that we were signing for today. And Mr. West said that is the way he had arranged it. That he would not be liable for any of the other notes...."

18. Transcript of jury trial, December 10, 1996, Pasquale Benso testifying, providing in pertinent part at p. 46:

"... Q Would guaranty the note?

A. And I say, they told him, yes. The next day we went to the bank and we set in the office with Jim West. I'm coming here to guaranty this note, the $11,000. He says that's what you guaranteed. There was paper. I signed and they bought [sic] a cashiers check that my son signed on the back and they kept the check...."

19. The affidavit, executed on October 16, 1987, is signed by James K. West and provides in pertinent part:

"... 1. On August 9, 1985, I was Executive Vice President of Norman Bank of Commerce, Norman, OK, and personally handled the loan transaction concerning Defendant, Pasquale Benso, in this case.

2. In my presence Pasquale Benso executed the Guaranty Agreement dated August 9, 1985, shown as Exhibit 'J' to the Petition in this case; this Guaranty Agreement, by agreement of Pasquale Benso and Norman Bank of Commerce, applied only to that certain promissory note dated August 9, 1985, being note number 13133, in the original principal balance of 11,-

filed only with the sixth note for $11,100.00. It did not appear in any of the files relating to the five previous loans nor did it specifically identify the antecedent debts.

¶ 14 When the cause was returned for trial under the mandate of *Cinco I*, Cinco was given the opportunity to present evidence of consideration given for extension of the antecedent debts. As noted in section II. infra, Cinco was successful in presenting evidence that two of the five notes were extended contemporaneously with the execution of the sixth note. The principal debt under all five notes totaled $53,301.57.[20] The notes extended—notes number 1 and 2—constituted the majority of the debt, totaling $45,801.57.

¶ 15 Although we express no opinion the effect of a state law defense to 18 U.S.C. § 1823(e) may have in a future cause, we note that some jurisdictions have allowed such defenses to recovery by the FDIC or its receivers.[21] Under the facts presented, no inequity will result in allowing the holding of *Cinco I* to stand as the settled law of the case. At the time it was signed, it was the intention of the guarantor and the bank's representative that the guaranty would cover only one note; the bank did not rely upon the guaranty in relation to the antecedent debts; the bank's practices would not indicate that the contract extended to more than one note; Cinco will recover the majority of the disputed debt; and authority exists for the extension of state law defenses in actions involving 18 U.S.C. § 1823(e).

## II.

¶ 16 **ADEQUATE CONSIDERATION EXISTS TO EXTEND THE GUARANTY TO TWO OF THE FIVE ANTECEDENT NOTES.**

■ ¶ 17 Consideration for antecedent debts must be supported by distinct consideration.[22] In *Cinco I*, we determined that on remand an inquiry into the overall arrangements for the guaranty agreement was necessary because the guaranty agreement did not expressly identify the underlying consideration and because the agreement allegedly covered antecedent debts.[23]

¶ 18 At trial, Cinco demonstrated that contemporaneously with the grant of the $11,100.00 loan and with the signing of the guaranty contract, two of the five pre-existing loans were extended[24]—loan No. 1 in the amount of $18,301.57 and loan No. 2 in the

100.00; it was specifically agreed that this Guaranty Agreement would not apply to any prior indebtedness of the Defendant Steve Benso.

3. It was the unvarying policy of Norman Bank of Commerce that a Guaranty Agreement would be placed only in the file to which it pertained; also, it was the Bank's policy, in every case, that a separate Guaranty Agreement be executed for each separate credit issued to a borrower, that is on each note.

4. In the course of this transaction Mr. Pasquale Benso stated words to the effect that 'this Guaranty applies only to the $11,100.00 note'; to which I replied 'yes', then he further inquired to the effect that 'this Guaranty does not apply to the old notes that Steve has', to which I replied 'no, it does not apply to those old notes'...."

20. See note 2, supra.

21. *FDIC v. Aetna Casualty & Surety Co.*, 947 F.2d 196, 206 (6th Cir.1991) *reh'g denied.* [Stripping insurance company of defense of material misrepresentation, defense recognized under Tennessee law, would effectively deny benefit of bargain.]; *FDIC v. Alvarez Lau*, 681 F.Supp. 977, 979 (D.Puerto Rico 1988) [Local law governing conjugal relationship rather than federal law applicable to extent of spouse's liability as bank official's spouse.]; *In re Pernie Bailey Drilling Co.*, 111 B.R. 565, 572 (Bkrtcy.W.D. Louisiana 1990) [D'Oench and FDIC shield did not bar action to avoid as fraudulent or preferential transfers or assignments by debtor to bank.]; *Stewart Title Guaranty Co. v. FDIC*, 936 S.W.2d 266, 268 (C.A.Tenn.1996), *review denied.* [Argument that title company's reliance upon estoppel was prevented by statute governing agreements against interests of FDIC would not be entertained for first time on appeal.].

22. *Cinco Enterprises, Inc. v. Benso*, see note 12, ¶ 16, supra; *Clements v. Jackson County Oil & Gas Co.*, 1916 OK ——, 61 Okla. 247, 161 P. 216–17.

23. *Cinco Enterprises, Inc. v. Benso*, see note 12, ¶ 20, supra.

24. The guaranty agreement was executed by Pasquale Benso on August 9, 1985. On the same day, commercial revision or extension agreements were signed for note No. 1 in the amount of $18,301.57 and note No. 2 in the amount of $27,500.00. Record on appeal, pp. 15 and 11, respectively. Transcript of jury trial, December 5, 1996, testimony of James K. West providing in pertinent part at pp. 61–62:

amount of $27,500.00—and that Benso was aware when he signed the guaranty agreement the extensions would occur.[25] No evidence was produced in relation to the three remaining notes. The extension of time will serve as consideration for payment of a pre-existing debt and for the underlying guaranty.[26] In both the petition for certiorari and in the reply to the response to the petition for certiorari, Benso recognizes this proposition of law and admits consideration sufficient to support an award on the two notes was shown at trial.[27] We hold that the bank's extension of two notes contemporaneously with the execution of the guaranty agreement constituted sufficient consideration for the contract.

## CONCLUSION

¶ 19   *Cinco I* controls our holding that federal law did not bar assertion of the state law defense of failure of consideration. Under the facts presented, no gross or manifest inequity will result in the application of the settled law of the case.[28] The guaranty agreement did not specify the notes to which it

---

"... Can you describe for us that document? A  This is an Extention [sic] Agreement which was used when the maturity dates were changed on existing commercial loan. The particular extention [sic] was for a loan for $18,000 Which had the interest paid to the date of the agreement which was August 9, 1985. And maturity of the loans was extended to February, 1986. ... Q  Who else has signed that instrument? A  Steve Benso.... Q  Can you identify that document? A  This is an Extension Agreement for another note which Steve had with us in the amount of $27,500. Q  The date it was executed? A  August 9, 1985...."

25.   Transcript of jury trial, December 10, 1996, testimony of Pasquale Benso providing in pertinent part at p. 86.
"... Q  And you signed that document anyway? A  With the understanding it was for the $11,-100.00. Q  And Steve signed a bunch of other papers while you were there didn't he? A  Yes, sir. Q  You knew Steve was going to use that money to pay interest on notes he already had at the bank? A  It put them up to date with the bank. Q  And you understood that the bank would then extend some of those notes for Steve? A  That's—I saw him sign a note, some long sheet note. Q  Did you also know the bank was reducing the interest rate on Steve's loans? A  I didn't pay attention to that...."

26.   *A & S Distributing Co. v. Nall–Tucker, Inc.*, 1967 OK 94, ¶ 7, 428 P.2d 254; *Yount v. Bank of Commerce*, 1935 OK ——, 172 Okla. 65, 44 P.2d 874, 878.   Title 15 O.S.1991 § 106 provides: "Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration."

27.   Benso's petition for certiorari, filed on December 28, 1998, provides in pertinent part at p. 10:
"... Oklahoma law requires evidence of separate and distinct consideration given for a guaranty of pre-existing indebtedness.  ....  The evidence at trial established that on the same date that Benso executed the Guaranty (August 9 1985) [sic], the bank as the direct beneficiary of the Guaranty renewed two (2) of the borrower's pre-existing obligations ... The evidence adduced actually revealed that the loan proceeds from the promissory note which was executed contemporaneous with the execution of the Guaranty ... was used primarily to pay accrued but unpaid interest on the other two promissory notes....  There was no evidence introduced at trial that was not in the record on *Cinco I* that supported any separate, distinct and contemporaneous consideration with respect to the other three (3) pre-existing promissory notes...."
Benso's reply to the response to the petition for certiorari provides in pertinent part at p. 5:
"... Sufficient evidence regarding the issue of consideration was adduced at trial to establish that the indebtedness evidenced by the two Promissory Notes renewed on the same date upon which the Guaranty was executed was supported by adequate consideration.  There was however no evidence introduced to show any separate, distinct **and** contemporaneous consideration with respect to any of the other antecedent indebtedness which Cinco argued was within the scope of the Guaranty...." [Emphasis in the original.]
An admission in the brief may be regarded as a supplement to the appellate record.  *Wright v. Grove Sun Newspaper Co., Inc.*, 1994 OK 37, ¶ 2, 873 P.2d 983; *Kwikset/Emhart v. Mayberry*, 1990 OK 112, ¶ 3, 800 P.2d 239; *Reeves v. Agee*, 1989 OK 25, ¶ 15, 769 P.2d 745; *Womack v. City of Oklahoma City*, 1986 OK 14, ¶ 10, 726 P.2d 1178.

28.   *Gay v. Hartford Underwriters Ins. Co.*, see note 15, supra; *McDonald v. Humphries*, see note 15,

applied. The bank's practices relating to guaranty agreements would not support extension of the agreement to all of the notes allegedly guaranteed. There is no evidence that the guarantor or the bank's officer ever intended for the guaranty to cover all of the notes. Cinco will recover the majority of the antecedent debt allegedly guaranteed. There is case law supporting the application of state law defenses to 18 U.S.C. § 1823(e).[29] Nevertheless, Cinco was successful in meeting the challenge of *Cinco I* to demonstrate the underlying consideration for the guaranty of two of the antecedent debts. We hold that Cinco is entitled to recover on note No. 1 for $18,301.57 and on note No. 2 for $27,-500.00. Our holding is based on Oklahoma law which provides *bona fide*, separate, adequate and independent grounds for our decision.[30]

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED.**

SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, SIMMS, KAUGER, JJ., concur.

LAVENDER, OPALA, WATT, JJ., dissent.

supra; *Cavett v. Peterson,* see note 15, supra; *Severson v. Roberts,* see note 15, supra; *Powell v. United Mining & Milling Co.,* see note 15, supra.

**29.** *FDIC v. Aetna Casualty & Surety Co.,* see note 21, supra; *FDIC v. Alvarez Lau,* see note 21, supra; *In re Pernie Bailey Drilling Co.,* see note

21, supra; *Stewart Title Guaranty Co. v. FDIC,* see note 21, supra.

**30.** *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).